J-A07007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KIMBERLY K. KING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CANON HILL VETERINARY CLINIC, INC. LEIGH A. MITCHELL, HILLSIDE STABLES, INC., AND GAYLENE WALKER, T/D/B/A HILLSIDE STABLES | |
| Appellee | No. 644 WDA 2015 |

Appeal from the Order March 24, 2015
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2012-1863

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MAY 10, 2016**

Appellant Kimberly K. King appeals from the order entered in the Washington County Court of Common Pleas, which granted summary judgment in favor of Appellees Canon Hill Veterinary Clinic, Inc. and Leah Mitchell[1] (collectively "Appellees").[2]

---

[1] Leigh A. Mitchell is the name listed on the caption and on the cover of the appellate briefs, but the trial court and Appellee Mitchell note her name is actually Leah Mitchell.

[2] Summary judgment was also granted in favor of Hillside Stables, Inc. and Gaylene Walker, t/d/b/a Hillside Stables ("other defendants").  Appellant is not appealing the order of summary judgment as it pertains to those parties.

The relevant facts and procedural history of this appeal are as follows. On April 5, 2010, Appellant was at Hillside Stables attending to her own horse when her friend's horse, Ruby, exhibited signs of distress. Appellant helped walk and calm the horse until Dr. Mitchell arrived in response to Ruby's owner's request. Appellant led Ruby on a lead rope while Dr. Mitchell removed fecal matter from Ruby and gave her a sedative. At some point, after Appellant warned Dr. Mitchell the horse was "going down," Ruby fell down and kicked Appellant in the face, causing injuries.

Appellant filed a complaint against Appellees and other defendants on May 23, 2012.[3] On December 10, 2014, following completion of the pleadings, the court ordered Appellant to file an expert report relative to the claims against Appellees. Appellant did not file an expert report.

On February 17, 2015, Appellees filed a motion for summary judgment, which maintained Appellant could not carry her burden of proof because she failed to produce an expert report, as was required in professional negligence actions. Appellant filed a response, which averred her claim sounded in ordinary negligence. The court heard argument on the motion.

_____

[3] Appellant initiated the action by filing a writ of summons on March 29, 2012.

On March 24, 2015, the court granted Appellees' summary judgment motion because Appellant's failure to submit an expert report was fatal to her action. Appellant timely filed a notice of appeal on April 17, 2015. On May 6, 2015, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and she timely complied on May 22, 2015.

Appellant raises the following issues for our review:

> 1 WHETHER THE [TRIAL] COURT COMMITTED ERROR OF LAW OR AN ABUSE OF DISCRETION IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [APPELLEES] IN ITS ORDER OF MARCH 23, 2015[?]
>
> 2 WHETHER [APPELLANT'S] COMPLAINT AGAINST [APPELLEES] ALLEGES ORDINARY NEGLIGENCE - THAT [APPELLEES] FAILED TO EXERCISE ORDINARY CARE TO NOT EXPOSE [APPELLANT] TO AN INCREASED RISK OF HARM[?]
>
> 3 WHETHER [APPELLANT'S] COMPLAINT AGAINST [APPELLEES] SOUNDS IN PROFESSIONAL NEGLIGENCE SUCH THAT SHE NEED[ED TO] SUBMIT AN EXPERT REPORT TO SUPPORT HER CLAIM[?]

Appellant's Brief at 4.

In her combined issues, Appellant argues the court erred in granting summary judgment based on the fact that she did not have an expert report, because her claims against Appellees sound in ordinary, not professional, negligence. Appellant's claims merit no relief.

Our standard of review for a court's order granting a motion for summary judgment is as follows:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a

genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Kozel v. Kozel**, 97 A.3d 767, 772 (Pa.Super.2014) (quoting **Daley v. A.W.**

**Chesterton, Inc.**, 37 A.3d 1175, 1179 (Pa.2012)).

The Pennsylvania Rules of Civil Procedure provide, in relevant part:

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2.

Further, we observe:

The record for purposes of deciding a motion for summary judgment includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits, Pa.R.C.P. 1035.1(1), (2), but oral testimony alone, of the moving party or his witnesses, *i.e.,* affidavits or depositions, even if uncontradicted, is generally insufficient to establish the

absence of a genuine issue of material fact, *see* [*Karoly v. Mancuso*, 65 A.3d 301, 308–09 (Pa.2013)], 1035.2 note (citing *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900 ([Pa.]1989); *Borough of Nanty–Glo*[, *supra.*]). Moreover, "[t]he questions of whether there are material facts in issue and whether the moving party is entitled to summary judgment are matters of law." *Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.,* 106 A.3d 27, 34 n. 5 ([Pa.]2014) (citations omitted).

*Bailets v. Pennsylvania Tpk. Comm'n*, 123 A.3d 300, 304 (Pa.2015).

Under Pennsylvania law:

To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed [the plaintiff] a duty; the defendant breached the duty; the plaintiff suffered actual harm; and a causal relationship existed between the breach of duty and the harm. In a professional malpractice action, the determination of whether there was a breach of duty requires the plaintiff to additionally show that the defendant's conduct fell below the relevant standard of care applicable to the rendition of the professional services at issue. In most cases, such a determination requires expert testimony because the negligence of a professional encompasses matters not within the ordinary knowledge and experience of laypersons.

* * *

[W]e discern that there are two questions involved in determining whether a claim alleges ordinary as opposed to professional negligence: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of professional judgment beyond the realm of common knowledge and experience.

*French v. Commonwealth Associates, Inc.*, 980 A.2d 623, 630-31

(Pa.Super.2009) (citation omitted).

This Court has most often discussed the distinction between ordinary and professional negligence in the context of medical malpractice cases.

\*    \*    \*

In order to determine what theory of liability [a plaintiff] is asserting, this Court must examine the averments she makes in her complaint.

*Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 934 A.2d 100, 104-05

(Pa.Super.2007) *aff'd,* 980 A.2d 502 (Pa.2009) (internal citations omitted).

One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons. In other words, because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons, a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury.

*Yee v. Roberts*, 878 A.2d 906, 912 (Pa.Super.2005) (internal quotations

and citation omitted).

As to a cause of action based on the negligence of a veterinarian in the performance of his/her professional duties or services, we note at the outset that malpractice claims have traditionally arisen in the context of services provided by the legal and medical professions. Similar to the practice of law or medicine, the vocation of veterinary medicine involves specialized education, knowledge, and skills. We conclude, therefore, that professional negligence concepts also extend to veterinary medicine.

The practice of veterinary medicine is extensively regulated in Pennsylvania under the Veterinary Medicine Practice Act, 63 P.S. § 485.1 et seq. "Veterinary medicine" is defined as the "branch of medicine which deals with the diagnosis, prognosis, treatment, administration, prescription, operation or manipulation or application of

any apparatus or appliance for any disease, pain, deformity, defect, injury, wound or physical condition of any animal or for the prevention of or the testing for the presence of any disease." 63 P.S. § 485.3(9).

* * *

To state a cause of action based upon the negligent acts or omissions of a veterinarian in the performance of professional duties or services, the plaintiff must plead (1) the employment of the veterinarian or other basis for the duty; (2) the veterinarian's failure to exercise the appropriate standard of care; and (3) that the veterinarian's departure from that standard was the proximate cause of the animal's injury or death. A plaintiff must specifically allege that the veterinarian was negligent in the performance of his professional services.

***Price v. Brown***, 680 A.2d 1149, 1152-53 (Pa.1996).

Appellant concedes that this would be a professional negligence claim if the horse's owner asserted liability against the veterinarian for injuries suffered by the horse, but claims that, because she is a third party who did not have a direct relationship with the doctor, her action is for ordinary negligence.

To determine whether Appellant is asserting professional or ordinary negligence, we need only look to her complaint. ***See Merlini ex rel. Merlini, supra.***

In her complaint, Appellant alleges:

23. The injuries and damages to Plaintiff King are the direct and proximate result of the joint and several negligence, carelessness and recklessness of the Defendants in the following respects:

(i) As to Defendants Canon Hill Veterinary Clinic, Inc., and Leigh A. Mitchell, agent, servant and/or employee of Defendant Canon Hill Veterinary Clinic, Inc.:

- 7 -

(a) In failing to blindfold the horse Ruby to reduce fear;

(b) In failing to hobble the horse to prevent it from kicking;

(c) In failing to properly restrain the horse;

(d) In failing to administer the appropriate sedative and/or the appropriate amount of sedative;

(e) In failing to wait until the sedative had fully taken effect before beginning the procedure;

(f) In failing to seek additional assistance when the horse became agitated;

(g) In failing to stop and reassess situation before continuing.

Complaint, filed May 23, 2012 at 4.

These allegations demonstrate that Appellant's action is for professional negligence, because they relate directly to Dr. Mitchell's improper treatment of Ruby while she was working on the horse as a veterinarian. Thus, it is an action that occurred while Dr. Mitchell was engaged in a professional relationship with Ruby, the first hallmark of a professional negligence case. *See French, supra.* Next, the claim raises questions of professional judgment beyond the realm of common knowledge and experience, the second test for a professional negligence claim. For example, a layperson would not likely know how much sedative to give a horse, how the horse would react to a sedative, or how long it would take the sedative to work.

Because this is a professional negligence case, Appellant was required to submit an expert report that demonstrated that Dr. Mitchell breached the

- 8 -

relevant standard of care. *See Yee, supra.* Because Appellant failed to submit an expert report, the trial court properly granted summary judgment in favor of Appellees.

Appellant's citations to cases in which professionals are not acting in their capacity as professionals and can therefore be held liable for ordinary negligence are irrelevant. The doctor was clearly acting as a veterinarian and treating a horse when Appellant was injured, and Appellant claims her injuries were caused because the doctor was negligent in her veterinary care of the horse.

In granting Appellees' summary judgment motion, the trial court reasoned:

> Because these allegations involve care and treatment by Mitchell, a licensed veterinarian, and [Appellant] does not claim that Mitchell was otherwise negligent in another respect unrelated to the care and treatment of Ruby, we conclude that her complaint sounds in professional negligence. As a consequence, [Appellant's] failure to submit an expert report to establish the applicable standard of care - and deviation from that standard - is fatal to her action.

Trial Court Opinion (granting summary judgment motion), filed March 18, 2015, at 4.

The trial court did not err as a matter of law or abuse its discretion in granting Appellees' summary judgment motion.

Order affirmed.

J-A07007-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/2016

- 10 -