IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| RALPH M. BAILETS, | : No. 12 MAP 2014 |
| | : |
| Appellant | : Appeal from the order of the |
| | : Commonwealth Court at No. 265 MD 2009 |
| | : dated February 4, 2014. |
| v. | : |
| | : ARGUED: March 11, 2015 |
| | : |
| PENNSYLVANIA TURNPIKE | : |
| COMMISSION, ANTHONY Q. MAUN, | : |
| (DIRECTOR OF ACCOUNTING), AND | : |
| NIKOLAUS H. GRIESHABER, (CHIEF | : |
| FINANCIAL OFFICER), | : |
| | : |
| Appellees | : |

## OPINION

**MR. JUSTICE EAKIN**                         **DECIDED: August 31, 2015**

In this appeal, we consider the Commonwealth Court's decision to grant summary judgment and deny relief under the Whistleblower Law, 43 P.S. §§ 1421-1428.[1] We reverse and remand for further proceedings.

For purposes of a summary judgment motion, the record includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Pa.R.C.P. 1035.1(1), (2). The record here shows appellant Ralph Bailets was employed by the Pennsylvania Turnpike Commission from 1998 to 2008. Appellant achieved

---

[1] Act of December 12, 1986, P.L. 1559, No. 169, § 1.

"outstanding" and "commendable" performance ratings while employed as the Commission's manager of financial reporting and systems. Appellant's Brief in Opposition to Appellees' Motion for Summary Judgment, at 30 n. 69. During this time, appellant frequently complained that he observed improprieties and wasteful practices regarding various matters, including a Commission computer systems contract with Ciber, Inc., EZPass discounts, politically motivated personnel actions, and the use of multiple, unnecessary external investment managers. Appellant's job title and responsibilities were changed in June, 2008, he was removed from an additional position as assistant secretary-treasurer around the same time, and his employment by the Commission was ultimately terminated in November, 2008.

Believing these adverse employment actions were retaliation for his reports of wrongdoing and waste at the Commission, appellant filed a complaint in the Commonwealth Court's original jurisdiction, alleging a single claim under the Whistleblower Law, against the Commission; Anthony Q. Maun, the Commission's director of accounting; and Nikolaus H. Grieshaber, the Commission's chief financial officer (collectively, appellees). At relevant times, Maun was appellant's supervisor at the Commission, and Grieshaber was appellant's co-worker, who later became appellant's superior.

Specifically, with regard to the Ciber computer systems contract, appellant alleged he made numerous oral and written reports to Maun and Grieshaber about the politically connected vendor's improper access to insider information for a Request for Proposal (RFP) for the creation of a computerized financial reporting system, which was not equally available to other bidding vendors. Complaint, ¶ 12. In response to appellant's criticism of the selection process, Maun allegedly stated, "You should not say anything about it," and warned him not to "make any waves or your job will be in jeopardy." Id., ¶ 10;

Deposition of Ralph M. Bailets, 5/10/13, at 41, 48, 89-91, 97. Appellant further claimed that, when Ciber was awarded a $62 million contract and began its work, he noted deficiencies in performance and initiated a series of meetings with Maun to discuss the problems, but there was no action in response to his complaints. Complaint, ¶¶ 13-16. Appellant also informed Maun about deficiencies in experience and training by Ciber's consultants, and his concern that it appeared Ciber was angling to get another contract for supplemental training, or "knowledge transfer." Bailets Deposition, 7/24/13, at 303-04, 326; id., ¶ 19-20. Ciber did get another contract for knowledge transfer (valued at an additional $20 million), and when appellant complained that the contracted-for knowledge transfer never occurred, Maun reminded appellant he was jeopardizing his job by criticizing Ciber. Bailets Deposition, 5/10/13, at 116-17; id., 7/24/13, at 191-94, 326-27, 420-24.

Appellant also talked with Grieshaber about his Ciber concerns and, according to appellant, Grieshaber agreed with appellant, but told him to "tread lightly" with Ciber. Id., 7/24/13, at 275. According to appellant, when Grieshaber was promoted to CFO, he developed "amnesia" on the topic, their relationship changed, Grieshaber eventually demoted appellant, and ultimately played a role in firing him. Id., 5/10/13, at 62-66, 88-89, 92-93, 104-06, 110-11. After his termination, appellant applied to the Commission three times for open positions for which he was qualified, but there was no response to his applications. Id., at 16-21; Complaint, ¶¶ 48-50.

During his time at the Commission, appellant also complained to Maun and Grieshaber about a so-called "discounting scheme" engaged in by the largest EZPass customers, which involved these large organizations getting deep discounts (20% of their toll charges) and then acting as suppliers of the discounted transponders to smaller organizations. Bailets Deposition, 5/10/13, at 147, 151; Deposition of Anthony Q. Maun,

3/14/11, at 86, 90, 91.   Appellant told Maun there was a resulting potential loss of millions of dollars in toll revenue.   Complaint, ¶¶ 30, 31, 34.   In addition, appellant discussed with Maun and Grieshaber his concerns about a policy by which Commissioners would "create, post and fill" staff positions in a single executive session, in derogation of competition and the regular merit selection process; appellant claims he and Grieshaber noted various political appointees who were hired at the Commission in this manner.   Id., ¶ 35; Bailets Deposition, 7/24/13, at 202-03, 208.   Relatedly, appellant discussed with both Maun and Grieshaber the Commission's use of too many politically connected external investment managers for Commission treasury funds which, in appellant's opinion, was unnecessary and a waste of money.   Complaint, ¶ 40; Bailets Deposition, 7/24/13, at 214-16, 223, 225, 240, 351, 413-15.

Appellees filed motions for summary judgment claiming appellant was fired from the Commission along with 14 other individuals, not because he was a whistleblower, but "in response to the poor economy, declining traffic and revenue numbers and in an organization-wide effort to reduce expenses."   Appellees' Memorandum of Law in Support of Motion for Summary Judgment, at 2.

In an unreported, single-judge opinion, Senior Judge Friedman held the decision to terminate appellant was "a management discretionary action, motivated by legitimate employer objectives."   Bailets v. Pennsylvania Turnpike Comm'n., No. 265 MD 2009, unpublished memorandum at 11 (Pa. Cmwlth. filed February 4, 2014).   Specifically, the court held the allegations regarding Grieshaber did not support a Whistleblower claim because appellant did not report wrongdoing or waste to Grieshaber while he was his supervisor.   Id., at 7-8.   With regard to Maun, the court determined there was no report of "wrongdoing," which it defined as wrongdoing by the employer or a violation of a law or

code of conduct the employer is charged to enforce for the good of the public. <u>Id.</u>, at 8

(citing <u>Sea v. Seif</u>, 831 A.2d 1288, 1291 (Pa. Cmwlth. 2003)).

The court further held appellant's claims he reported wrongdoing and waste at the

Commission were not supported by the record, and the claim regarding the "create, post,

and fill" practice was not a "good faith report" as required by the statute; the court found

appellant complained about this practice only when it affected him — when he was

unable to obtain a particular position in which he was interested because it was filled this

way. <u>Id.</u>, at 9-10. The court concluded there were legitimate reasons for firing

appellant, and there was nothing in the record establishing the decision makers who

terminated his position were even aware of appellant's reports of alleged wrongdoing and

waste; the evidence instead showed 15 positions were eliminated in November, 2008,

because of "a poor economy, declining traffic, and necessary expense reductions across

the Commission." <u>Id.</u>, at 11.

Appellant filed an appeal in this Court raising the following questions:

a. Did the court err in failing to consider and properly evaluate the evidence in this case, including, but not limited to, the [p]resentment handed down by the 33rd Statewide Investigative Grand Jury and substantiated by a subsequent preliminary hearing and pending trial; the fact that the second in command at the [Commission] (George Hatalowich) invoked the Fifth Amendment when questioned about [appellant]'s termination and other relevant facts; the fact that all [appellees] and the CEO of the [Commission] showed consciousness of guilt by misrepresenting material facts during their depositions when questioned about political influence on [Commission] contracts and other relevant matters; the fact that the third in command of the [Commission] at the relevant time (Deborah Davis) provided a sworn [a]ffidavit supporting [appellant] and particularly showing that [appellant]'s termination for budgetary reasons was totally pretextual and supporting that [appellant] was terminated for being critical of the Ciber contract alleged in his

[c]omplaint; and other facts which, when properly evaluated, should have resulted in denial of [appellees]' [s]ummary [j]udgment [m]otions?[2]

b. Did the lower [c]ourt err in holding that it was an undisputed fact in this case that [appellant] had been terminated for non-pretextual valid reasons, i.e., budgetary restraints due to a drop off in [Commission] revenues?

c. Did the [c]ourt err as a matter of law in holding that [appellee] Grieshaber would be immune from Whistleblower [Law] liability if he was a peer of [appellant] at the time [appellant] complained to his superiors about the Ciber contract but then subsequently became [appellant]'s superior and the person deciding to terminate him because of his Whistleblowing activity?

d. Did the [c]ourt err as a matter of law in holding that because the contracts with Ciber were fixed-rate contracts they could not involve waste in violation of the Whistleblower [Law] and that [appellant] had failed to report any wrongdoing under the Whistleblower [Law]?

e. Did the [c]ourt err as a matter of law in holding that under the facts of this case, the granting of [s]ummary [j]udgment was clear and free from doubt?

Appellant's Brief, at 2-3.

Summary judgment is proper only where there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. Karoly v.

---

2 We do not reach the first sub-issue contained in this claim, which relates to the presentment of the 33rd \Statewide Investigating Grand Jury. The investigation — during which appellant testified along with hundreds of others — resulted in corruption charges against several individuals, including Commission officials Mitchell Rubin, George Hatalowich, and Joseph Brimmeier, as well as Ciber's David Miller, and resulted in various guilty pleas. See "8 charged in alleged turnpike corruption," Brad Bumsted and Tom Fontaine, http://triblive.com/news/adminpage/3652326-74/turnpike-former-brimmeier#axzz3cgXrD FCD (retrieved June 10, 2015); "Turnpike Prosecutions End with Convictions But No Jail Time," http://pittsburgh.cbslocal.com/2014/11/21/turnpike-prosecutions-end-with-convictions-bu t-no-jail-time/ (retrieved June 10, 2015); see also "How Whistleblowers uncovered a 'pay-to-play' culture in the Pennsylvania Turnpike," http://pennlive.com, 11/6/13. While the presentments may indicate at least some of appellant's complaints were well founded, appellees herein were not indicted.

Mancuso, 65 A.3d 301, 308-09 (Pa. 2013); see also Pa.R.C.P. 1035.2(2) (summary judgment proper if, after completion of discovery relevant to motion, adverse party who would bear burden of proof at trial fails to produce evidence of facts essential to cause of action or defense which in jury trial would require issues to be submitted to jury). In considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to whether a genuine issue exists are resolved against the moving party. Karoly, at 309. The record for purposes of deciding a motion for summary judgment includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits, Pa.R.C.P. 1035.1(1), (2), but oral testimony alone, of the moving party or his witnesses, i.e., affidavits or depositions, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact, see id., 1035.2 note (citing Penn Center House, Inc. v. Hoffman, 553 A.2d 900 (Pa. 1989); Borough of Nanty-Glo v. Am. Sur. Co. of New York, 163 A. 523 (Pa. 1932)). Moreover, "[t]he questions of whether there are material facts in issue and whether the moving party is entitled to summary judgment are matters of law." Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co., 106 A.3d 27, 34 n.5 (Pa. 2014) (citations omitted). Finally, our scope of review of questions of law is de novo, and we need not defer to the lower court's determinations. Summers v. Certainteed Corp., 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

Appellant argues the Commonwealth Court "totally ignored numerous items of probative evidence," including a grand jury presentment which resulted in criminal charges against several individuals arising out of Ciber's contract with the Commission, and the fact that Commission chief operating officer George Hatalowich asserted his Fifth

Amendment right to silence when specifically asked about appellant's termination during his deposition; appellant notes such an invocation supports an adverse inference in a civil case. Appellant's Brief, at 40-41 (citing RAD Services, Inc. v. Aetna Cas. and Sur. Co., 808 F.2d 271 (3d Cir. 1986)); see also Deposition of George Hatalowich, 1/25/12, 5-14. According to appellant, the court also ignored sworn evidence the Ciber contract was the product of illegal corruption, Commission employees critical of the contract were being systematically terminated, and the terminations were "unprecedented and pretextual." Appellant's Brief, at 43 (citing Affidavit of Deb Davis, Appellant's Brief in Opposition to Appellees' Motion for Summary Judgment, Exhibit 7). Appellant asserts the evidence he presented below, when viewed properly in the light most favorable to him, established a prima facie violation of the Whistleblower Law and warranted additional proceedings in the trial court.

Appellant further contends the lower court erred when it held that, even if he established a prima facie case, appellees met their burden to prove a legitimate purpose for terminating him, and they "would have taken the same adverse employment action absent [appellant's] good-faith report of wrongdoing." Appellant's Brief at 44 (quoting O'Rourke v. Dep't. of Corr., 778 A.2d 1194, 1204 (Pa. 2001)). Appellant argues the evidence he presented, when properly viewed, supports the inference the 2008 Commission layoffs, allegedly made for budgetary reasons, were actually intended to remove employees critical of the corrupt Ciber contract. Appellant also claims the trial court erred in holding his reports to Grieshaber could not support Whistleblower Law liability because Grieshaber was not his supervisor at the time; appellant argues a plain

reading of the statute does not require the superior initiating the adverse employment action (Grieshaber) be the same superior to whom the report was initially made (Maun).

In addition, appellant asserts the trial court erred when it held the Ciber contracts could not constitute "waste" in violation of the Whistleblower Law because they were fixed-rate contracts. Appellant notes the Commission was "vigorously advancing a 'no waste' argument in this case while keeping secret its own commissioned report" indicating the Ciber contract did indeed involve waste of $45 million. Appellant's Brief, at 55.[3] Appellant further argues his reports included instances of "wrongdoing" as required by the Whistleblower Law. Appellant's Brief, at 53. Appellant insists this case is not clear and free from doubt, and as a result, summary judgment was erroneously granted. See, e.g., Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005) (court may grant summary judgment only where right to such judgment is clear and free from doubt).

In their brief — filed prior to the Commission's recent admission the Ciber contract involved "waste" — appellees claim appellant cannot prove, by a preponderance of the evidence, he "reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." Appellees' Brief, at 31-32, 41 (quoting 43 P.S. § 1424(b)). Appellees emphasize "wrongdoing" means the violation of a statute, regulation, other law the employer is "charged to enforce for the good of the public[,] or [one] dealing with the internal administration of the governmental employer in question." Id., at 32 (quoting Gray v. Hafer, 651 A.2d 221, 224 (Pa. Cmwlth. 1994), aff'd per curiam, 669 A.2d 335 (Pa. 1995)). Appellees assert

_____

[3] On April 28, 2015, this Court granted appellees' application for leave to file a post-submission communication indicating the Commission has changed its position on this issue, and has admitted, in its own lawsuit against Ciber, the Ciber contracts "did involve waste in violation of the Whistleblower Law." Application for Leave to File Post-Submission Communication, ¶ 6.

"wrongdoing" does not include potential or possible violations, but only actual violations. Appellees' Brief, at 32 (citing Morgan v. Rossi, 1998 W.L. 175604, at *8 (E.D. Pa. April 15, 1998)). Appellees argue appellant never identified or reported the violation of an actual law or regulation, beyond his vague reference to the Federal Acquisition Regulations (FAR), or general industry standards and good practices. Appellees further argue the general ethics policy set forth in the Commonwealth Procurement Code cannot support a claim under the Whistleblower Law. See 62 Pa.C.S. § 2301 (setting forth Commonwealth policy to promote and balance objectives of protecting government integrity and facilitating recruitment and retention of personnel; public employees to discharge duties impartially to assure fair competitive access to agency procurement by responsible contractors, to foster public confidence in integrity of Commonwealth procurement process).

Appellees assert appellant never established a causal connection between his reports of alleged wrongdoing and waste and his termination, and without such proof he cannot prevail on a Whistleblower claim. See Golaschevsky v. Dep't of Envtl. Prot., 720 A.2d 757, 759 (Pa. 1998) (Whistleblower Law plaintiff must show by "concrete facts" or surrounding circumstances his report of wrongdoing led to his dismissal). Appellees state the temporal distance between appellant's reports (March and October of 2007) and his termination in November, 2008 undermine such a causal connection. Even taking into account evidence appellant argues the lower court ignored, such as the grand jury presentment, Hatalowich's invocation of the Fifth Amendment, and the Davis affidavit, which may not be admissible for the truth of its contents at trial,[4] appellees claim appellant still cannot prove his case by a preponderance of evidence. Appellees also

---

[4] See generally Pa.R.C.P. 1035.4 (supporting and opposing affidavits shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that signer is competent to testify to matters stated therein).

assert there is no evidence the decision makers who actually fired appellant were aware of his reports of wrongdoing.

Finally, appellees argue appellant has not shown he is entitled to relief on the basis of his other reports of alleged wrongdoing and waste: the EZPass discount scheme, the use of multiple investment managers, and improper hiring practices. In any event, appellees argue, even if appellant could show a prima facie case of liability, the lower court properly found it was rebutted by a separate, legitimate, and non-pretextual reason for firing him. See 43 Pa.C.S. § 1424(c) (proof by preponderance of evidence that termination occurred for separate and legitimate non-pretextual reasons shall be defense to action); O'Rourke, at 1204 (employer may rebut prima facie case by showing it would have taken same action absent employee's reports). Appellees argue they proved appellant was fired for legitimate budgetary reasons.

Appellant filed a reply brief to reiterate there are genuine issues of material fact that should have precluded summary judgment. He focuses on his own extensive deposition testimony regarding appellees' frequent and candid discussion of the political influence on the Commission's hiring and contracting decisions, and appellees' conflicting testimony on this point. Appellant's Reply Brief, at 3. According to appellant, these factual disputes based on oral testimony may not be resolved on summary judgment. Id., at 3-4 (citing Nanty-Glo, supra). Appellant contends his additional evidence regarding his complaints about the Commission's endorsement of EZPass reseller discounts, its unnecessary use of multiple investment managers, and the continued hiring of unqualified patronage appointees undermines the pretextual position that he was fired for budgetary reasons.

As the parties' disparate takes on the record and the interpretations they draw from it suggest, there are disputed issues of material fact that, when viewed in the light most

favorable to appellant as the non-moving party, should have precluded summary judgment in favor of appellees.  See, e.g., Alderwoods, at 34 n.5 (citing Smith v. Township of Richmond, 82 A.3d 407, 414-15 (Pa. 2013)). Whether the record would support a verdict or not, it is sufficient to preclude summary judgment.

The Whistleblower Law provides protection for employees of a public employer who report a violation or suspected violation of state law.  See 43 P.S. § 1421, Historical and Statutory Notes ("An Act providing protection for employees who report a violation or suspected violation of State, local or Federal law; providing protection for employees who participate in hearings, investigations, legislative inquiries or court actions; and prescribing remedies and penalties.").  The statute defines a "whistleblower" as "[a] person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority."  Id., § 1422.  The term "employer" is defined as "a public body," and includes an individual "who receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body."  Id.  And, a "public body" includes "[a] State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government," or "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body."  Id.[5]  The term

---

[5] The Commission is "an instrumentality of the Commonwealth" that consists of five members; the Secretary of Transportation serves as an ex officio member, and the remaining four members of the Commission are appointed by the Governor of Pennsylvania, by and with the advice and consent of two-thirds of the Senate.  36 P.S. § 652d.

"waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."  43 P.S. § 1422.

The Whistleblower Law expressly prohibits an employer from retaliating against an employee because of that employee's report of wrongdoing or waste by the employer, and an employee alleging a violation may bring a civil action for injunctive relief, or damages, or both.  Id., § 1423(a).  An employee alleging a violation of the Whistleblower Law must show, by a preponderance of the evidence, that prior to the adverse employment action, the employee reported in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.  Id., § 1424(b).  An employer may defend such an action by showing, by a preponderance of the evidence, its action against the employee "occurred for separate and legitimate reasons, which are not merely pretextual."  Id., § 1424(c).

Thus, in order to obtain relief on his Whistleblower Law action against the Commission, appellant must establish he made verbal or written reports of wrongdoing or waste by the Commission to his superior or another agent of the employer, and that he was fired due to these reports.  Appellant need only demonstrate these facts by a preponderance of the evidence.  Appellant therefore has to "show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to his dismissal, such as that there was specific direction or information he received not to file the report or there would be adverse consequences because the report was filed."  Gray, at 225; see also Golaschevsky, at 759.

Viewing the record in the light most favorable to appellant, there is sufficient record evidence that Maun and Grieshaber admonished him not to report his observations about the Ciber contract, or his job would be in jeopardy.  Bailets Deposition, 5/10/13, at 89-91,

There is evidence appellant made complaints to Grieshaber during the time the two men were co-workers, before Grieshaber was promoted to CFO, and Grieshaber warned appellant to be careful regarding Ciber because Ciber was politically connected. Id., 7/24/13, at 274-76. Appellant testified he continued talking to Maun about Ciber up to the week he was fired, even if his email correspondence on the topic had subsided by then. Id., at 189-90. Moreover, despite the Commonwealth Court's determination the fixed-rate Ciber contracts criticized by appellant could not involve waste, appellees have now supplemented the record to include the Commission's admission those contracts "did involve waste in violation of the Whistleblower Law." Application for Leave to File Post-Submission Communication, ¶ 6. In any event, it seems apparent that a fixed-price contract can involve waste for at least two reasons. First, the contract price may be artificially inflated for a politically-connected vendor who need not compete on a level playing field or worry that its wasteful practices will be challenged by the procuring agency. Second, if the fixed-price contract includes an item (such as knowledge transfer) which then becomes the subject of a supplemental contract, the price of the supplemental contract constitutes waste. Appellant's reports implicated both of these ways in which waste was allegedly occurring.

The record also indicates appellant made reports of wrongdoing, which is defined to include a violation of a state or federal statute or regulation. See 43 Pa.C.S. § 1422. Contrary to the Commonwealth Court's conclusion appellant "cannot point to" such a violation, Bailets, at 8, the reports identified that appellees implemented a procurement process which unfairly advantaged a vendor with inside information. If true, this would constitute a violation of Pennsylvania's Procurement Code. See 62 Pa.C.S. § 2301 (requiring that "public employees discharge their duties impartially so as to assure fair competitive access to Commonwealth agency procurement by responsible contractors

and that they conduct themselves in a manner that fosters public confidence in the integrity of the Commonwealth procurement process").[6]

It is true Maun and Grieshaber presented conflicting evidence in their own deposition testimony. The record also indicates at least a factual dispute with regard to a causal connection between appellant's reports and his subsequent termination, particularly when considering the period of time between appellant's earliest complaints and his actual termination date. Maun Deposition, 3/14/11, at 33-34; Deposition of Nikolaus H. Grieshaber, 6/24/11, at 66. However, viewing the evidence in the light most favorable to appellant, it is clear he adduced sufficient evidence of reports of waste to a direct supervisor, and to a co-worker who later became CFO, to withstand a motion for summary judgment. Though appellant may not have presented "concrete evidence" regarding the precise manner in which his complaints may have made their way up the chain of command, appellant did provide evidence of "surrounding circumstances" regarding the knowledge and warnings of Maun and Grieshaber, both of whom subsequently had authority to make recommendations to the Commission regarding appellant's future employment status. See Golaschevsky, at 759; Gray, at 225. The record here is readily distinguishable from a situation where there is "not even an innuendo of any nexus between" an employee's report of waste and his termination, such that a Whistleblower claim must fail as a matter of law. See Lutz v. Springettsbury Township, 667 A.2d 251, 254 (Pa. Cmwlth. 1995).

Although appellees make much of the fact appellant's reports of wrongdoing to Grieshaber occurred while the two men were peers, before Grieshaber became CFO, we do not consider this circumstance dispositive. The reports to Grieshaber were made to

---

[6] Although § 2301 is primarily a legislative policy statement, it also contains a mandate as reflected in the portion quoted above.

"an agent" of the employer, or an "agent" of the public body (i.e., the Commission), both of which are included as the proper recipient of a report as required under the Whistleblower Law. 43 P.S. § 1422; see also Rankin v. City of Philadelphia, 963 F.Supp. 463 (E.D. Pa. 1997) (city employees could not avoid liability under Whistleblower Law by claiming they were not "employers" of whistleblower plaintiff; any person who is "an agent of a public body" is "employer" under law).

Thus, it is clear appellant presented prima facie evidence of violations of the Whistleblower Law, which at the very least created issues of material fact to preclude the grant of summary judgment.[7]   In rebuttal, appellees presented evidence regarding "budget cuts" and "budgetary reasons" which caused appellant's dismissal.   Appellees' Motion for Summary Judgment, Exhibit K, Letter from George Hatalowich, 11/7/08; id., Exhibit M, Letter from Patricia F. Schlegel, 11/20/08; Maun Deposition, 3/14/11, at 18.   In turn, appellant presented conflicting evidence the budgetary excuse was a mere pretext: Commission revenues were actually rising during this period of time, other employees were given raises, new individuals were hired to fill new positions after appellant was ostensibly fired for budgetary reasons, and the Commission had not yet even completed

---

[7] This is so even without consideration of the evidence of Commission corruption contained in the Grand Jury presentment, attached by appellant to his brief in opposition to the motion for summary judgment.  We therefore need not decide the question of admissibility of the presentment at this juncture.   Nor is it necessary to consider Hatalowich's invocation of the Fifth Amendment during his deposition in the present matter in order to reach our conclusion here.   According to appellant, the Commonwealth Court improperly ignored this additional support for his position, and we note appellant is correct that the evidence is relevant and admissible in this civil case.   See Baxter v. Palmigiano, 425 U.S. 308, 319 (1976) (observing that, in non-criminal setting, refusal to answer question regarding potential criminality is relevant fact that may be considered in interest of "improv[ing] the chances for accurate decisions"); see also RAD Services, at 275 (acknowledging that, in civil proceeding, evidence of person's refusal to testify may be considered by trier of fact).

a new budget by November, 2008. Appellant's Brief in Opposition to Appellees' Motion for Summary Judgment, Exhibit 5, Gross Toll Revenue by Class and Method; id., Exhibit 7, Affidavit of D. Davis, ¶¶ 10-17; Maun Deposition, 3/14/11, at 79-80; Grieshaber Deposition, 6/24/11, at 82. The record thus presents evidence creating material issues of disputed fact regarding whether appellant was fired because of his complaints to Maun and Grieshaber about waste and wrongdoing at the Commission; appellant was not required to resolve these disputes, which turn in some instances on the credibility of witnesses, at the summary judgment phase. However, the Commonwealth Court decided the issue of pretext in favor of appellees, which was error. See Alderwoods, at 41 (evidence presented by defendant seeking summary judgment conflicted with plaintiff's evidence; in light of such conflict, movant cannot merely rest upon recitations of evidence supportive of its own position, since such differences present questions for finder of fact and not judge attending to summary judgment motion).

We hold there remain genuine issues of material fact surrounding the reasons for appellant's termination and its connection to his reports of improper activity at the Commission. Thus, the Commonwealth Court erred in granting summary judgment in favor of appellees. We therefore vacate the judgment, reverse the Commonwealth Court's decision, and remand to that court for further proceedings consistent with this opinion.

Reversed and remanded. Jurisdiction relinquished.

Mr. Chief Justice Saylor, Mr. Justice Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.