J. S15017/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

JERALD L. DITLOW, INDIVIDUALLY AND :    IN THE SUPERIOR COURT OF
ON BEHALF OF MARCY S. DITLOW, :        PENNSYLVANIA
DECEDENT, :
              APPELLANT :
          v. :
                                    :
CHELTENHAM YORK ROAD NURSING :
AND REHABILITATION CENTER AND :
ALBERT EINSTEIN MEDICAL CENTER :
                                    :    No. 905 EDA 2016

Appeal from the Order Entered February 22, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 140201708

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:            **FILED MARCH 29, 2017**

Appellant, Jerald L. Ditlow, appeals from the Order granting summary judgment in favor of Cheltenham York Road Nursing and Rehabilitation Center ("Cheltenham") and Albert Einstein Medical Center ("AEMC") (collectively, "Appellees") in this medical negligence action. After careful review, we affirm.

The trial court set forth the facts and procedural history as follows:

> In 2008, [Decedent] Mrs. Ditlow, was admitted to [Cheltenham] after having received a course of treatment at Abington Hospital for bilateral lower extremity contractions and recovery from hip surgery. [Appellant, Decedent's husband] alleges that after [Decedent's] admission to Cheltenham, Cheltenham's negligence over the next several years caused [Decedent] to suffer from the following conditions, among others: "see through" bones, anemia, diminished lung function, punctured lung and persistent cough.

On February 9, 2012, [Decedent] was transported from Cheltenham to [AEMC], presenting with breathing problems. [Appellant] alleges that while [Decedent] was at Einstein, certain procedures should have been performed, but were not; other procedures were performed incompetently. On February 10, [Decedent] was intubated; [Appellant] alleges that [ ] [D]ecedent was intubated without her consent or that of her next of kin. [Appellant] alleges further that [Decedent] suffered a broken femur, that her esophagus and lung both were punctured, and that she suffered severe [edema] while in [AEMC's] care. [Decedent] died minutes after the ventilator was removed on February 16, 2012. [Decedent was 64 years old.] Her death certificate states that the cause of death was hypoxic respiratory failure due to, or as a consequence of, septic shock related to pneumonia.

Trial Ct. Op., 5/24/16, at 2-3 (citations to Appellant's Amended Complaint omitted).

On February 18, 2014, Appellant commenced this matter by filing a Writ of Summons, naming AEMC and Cheltenham as defendants. On April 17, 2014, Appellant filed a Motion for Leave to Conduct Pre-Complaint Discovery in Lieu of Certificate of Merit, which the trial court denied on May 15, 2014.

On May 29, 2014, Appellant filed a Complaint and Certificates of Merit against Appellees, raising the following claims: (i) Medical Negligence; (ii) Corporate Liability; (iii) Lack of Informed Consent; (iv) Negligent Infliction of Emotional Distress; (v) Fraudulent/Negligent Misrepresentation; (vi) Wrongful Death Action; (vii) Survival Action; and (viii) Punitive Damages.

On June 19, 2014, both Appellees filed separate Preliminary Objections to Appellant's Complaint. On August 12, 2014, the trial court sustained in

part and overruled in part Appellees' Preliminary Objections, dismissing Appellant's claim of Negligent Infliction of Emotional Distress with prejudice, and Fraudulent/Negligent Misrepresentation Claims without prejudice. The court also granted Appellant leave to file an Amended Complaint addressing Appellees' objections to the Complaint's lack of specificity.

On August 22, 2014, Appellant filed an Amended Complaint, advancing claims of: (i) Medical Negligence; (ii) Corporate Liability; (iii) Lack of Informed Consent; (iv) Fraudulent/Negligent Misrepresentation; (v) Punitive Damages; (vi) Wrongful Death; and (vii) Survival Action against Appellees.

On September 10, 2014, AEMC filed an Answer and New Matter, to which Appellant filed a Reply on October 1, 2014. On September 11, 2014, Cheltenham filed Preliminary Objections to Appellant's Amended Complaint.

On October 8, 2014, the court struck Appellant's Fraudulent/Negligent Misrepresentation Claim against Cheltenham for failure to state a cause of action.

The parties concluded discovery on September 8, 2015, but Appellant failed to file any expert reports.

On October 30, 2015, and November 2, 2015, AEMC and Cheltenham, respectively, filed Motions for Summary Judgment. Appellant filed Answers to both Motions.

Following a February 10, 2016 hearing, the trial court granted Appellees' Motions for Summary Judgment on February 22, 2016, and

dismissed all claims against both Appellees. Appellant timely appealed.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises one issue for our review:

> Was an error of law committed when the [t]rial [c]ourt granted [Appellees'] Summary Judgment Motions preempting [Appellant] from proceeding to trial of the instant matter via application of *res ipsa loquitur* in conjunction with 231 Pa.C.S. § 1042(a)(3) [*sic*][.]

Appellant's Brief at 15.

Appellant argues that, because Decedent's "deplorable condition is the kind of condition [that] does not occur in the absence of negligence[,]" the trial court erred in failing to apply the doctrine of *res ipsa loquitur*, which would have relieved Appellant of the obligation to provide testimony of an expert in order to make out a *prima facie* negligence claim.[1] ***Id.*** at 20.

Our Supreme Court has clarified our role in reviewing summary judgment determinations as follows:

> . . . [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

---

[1] Appellant does not challenge the portions of the trial court's Orders dismissing Appellant's Fraudulent/Negligent Misrepresentation or Wrongful Death claims, claim for Punitive Damages, or claim under the Survival Act.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id***. (citation and quotation omitted); ***see also*** Pa.R.C.P. No. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, ***supra*** at 1159 (citation omitted). "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id***. (citation and internal quotation marks omitted).

For purposes of deciding a Motion for Summary Judgment, the record includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits. ***Bailets v. Pennsylvania Tpk. Comm'n***, 123 A.3d 300, 3014 (Pa. 2015) (citing Pa.R.C.P. 1035.1(1), (2)). "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." ***Truax v. Roulhac***, 126 A.3d 991, 997 (Pa. Super. 2015), ***appeal denied***, 129 A.3d 1244 (Pa. 2015) (citation and quotation omitted). "Further, failure of a non-

moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id.* (citation and quotation omitted).

Where a plaintiff has raised claims of Medical Negligence, Corporate Negligence, and Informed Consent, in order to make out a *prima facie* case, he is required to present expert testimony. *See Quinby v. Plumsteadville Family Practice*, 907 A.2d 1061, 1070-71 Pa. (2006). (explaining that, in a medical malpractice action, a plaintiff must present a medical expert to establish the applicable standard of care, the deviation from that standard, causation, and the extent of the injury); *Welsh v. Bulger*, 698 A.2d 581, 585-86 (Pa. 1997) (noting that a corporate negligence claim requires an expert to identify a defendant medical institution's standard of care, and the ways in which the defendant's departure from those standards led to the plaintiff's injuries); *Moure v. Raeuchle*, 604 A.2d 1003, 1008 (Pa. 1992) (holding that a lack of informed consent claim requires "expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring.").

A medical malpractice plaintiff is relieved of his burden to provide a medical expert who will testify only if he can prove "that he has been injured

by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence." **Quinby**, 907 A.2d at 1071. The application of this doctrine—*res ipsa loquitur*—is appropriate when

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

**Id.** (quoting Rest. (2d) Torts § 328(D)(1)).

"It is the function of the court to determine whether the inference [of a defendant's negligence] may reasonably be drawn by the jury, or whether it must necessarily be drawn." **Id.** (quoting Rest. (2d) Torts § 328(D)(2)).

In concluding that Appellant failed to make out a *prima facie* case, the trial court noted the following:

> The record in this case is sparse. The court has before it the docket, prior orders, the amended complaint, [Appellees'] respective answers thereto, [Appellant's] response to [AEMC's] malpractice interrogatories, four defense expert reports and excerpts from the defense deposition taken of Leslie Ditlow, Esq., counsel for [Appellant] and daughter of [Appellant] and [D]ecedent. There are no admissions and there are no affidavits. There is no deposition testimony from any defense witness. **The record contains no evidence that [Appellant] conducted any discovery. Most important, the record contains no expert evidence in support of [Appellant's] claims, and at oral argument, [Appellant's] counsel made clear that one was not forthcoming.**

***

> As far as can be gleaned from [Appellant's] own [A]mended [C]omplaint and his [A]nswers to [AEMC's I]nterrogatories, [Decedent] presented a complex constellation of medical challenges. They included bi-lateral lower extremity contractures and surgically repaired hip fracture, proper medications and/or physical therapy, depression, cardiac and blood pressure history, anemia, bone disease, scoliosis, a bone fracture with indications for amputation, respiratory ailments, pneumothorax, edema, esophageal and lung injuries and medical procedures such as defibrillation and intubation.
>
> [Appellees'] experts reported that upon [D]ecedent's admission to Cheltenham in 2008, she was already suffering "depression, anxiety, hypercholesterolemia, hypertension, bilateral knee contractures, diffuse myopathy" and had been "non-ambulatory for greater than one year." She had "restrictive lung disease, fractured femur, contractures, depressive disorder, hypertension, gastroesophageal reflux, scoliosis, and was not ambulatory. Upon her admission to [AEMC] she was diagnosed with "a past history of severe kyphoscoliosis, chronic obstructive lung disease and depression" and "hypercapnic respiratory failure," tachycardia and atrial fibrillation. Her pulmonary problems upon admission to [AEMC] included "atrial fibrillation and atelectasis of her left bronchial tree." As far as can be discerned from the record, the procedures that were performed on [Decedent] included a thoracentesis, blood transfusion and intubation."

Trial Ct. Op., 5/24/16, at 4-7 (footnotes and citations omitted) (emphasis added).

The trial court considered Appellees' Motions for Summary Judgment on Appellant's Medical Negligence, Corporate Negligence, and Informed Consent claims with Decedent's complicated and extensive medical history. It concluded as follows:

> The record, then, shows that [D]ecedent suffered from an array of pulmonary, cardiac, and bone diseases when she came into [Appellees'] care. Against this picture, [Appellant] failed to present any expert testimony of the respective standards of care [] in treating these aggregated conditions or any evidence showing how [Appellees'] conduct deviated from those standards. [Appellant's] record, such as it is, consists of conclusory allegations of neglect, starvation and dehydration that are unsupported by evidence and are merely lay opinions; they are insufficient to sustain any *prima facie* case on medical negligence, corporate negligence, or informed consent that can be given to a jury.

*Id.* at 7 (citations omitted).

With respect to Appellant's claim that the doctrine of *res ipsa loquitur* is applicable in this case, and that Appellant could proceed without an expert, the trial court noted:

> it is plain from the complicated medical history and status of the decedent that *res ipsa loquitur* is an unavailable theory in this case. **Toogood v. Rogal**, 824 A.2d 1140, 1150 (Pa. 2003) [(plurality)] (stating "[w]e reiterate that the degree of care and skill [of a medical professional] can only be proven by the testimony of experts" and that *res ipsa loquitur* is inapplicable where such care and skill is challenged).

*Id.* at 7-8.

We agree with the trial court that, in light of the complex and numerous medical problems Decedent presented to Appellees, the doctrine of *res ipsa loquitur* is not applicable to this matter. The court correctly concluded that Appellant failed to satisfy the first and second prongs of the test to determine the applicability of the doctrine *i.e.* that Appellant did not

establish that Decedent could not have died absent any negligence on the part of Appellees, and that Appellant did not sufficiently eliminate by the evidence other responsible causes of Decedent's death.

Because the facts rendered the doctrine of *res ipsa loquitur* inapplicable, Appellant was required to provide expert testimony to establish a *prima facie* case of Medical Negligence, Corporate Negligence, and lack of Informed Consent. Appellant did not provide such testimony. Accordingly, the trial court properly granted summary judgment in Appellees' favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017