J-S33019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DAVID OLSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LEHIGH UNIVERSITY | : | |
| | : | |
| Appellee | : | No. 1118 EDA 2022 |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2018-07261

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                **FILED APRIL 19, 2023**

Appellant, David Olson, appeals from the order entered in the Northampton County Court of Common Pleas, which granted summary judgment in favor of Appellee, Lehigh University, in this Pennsylvania Whistleblower Law action.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On December 27, 2018, Appellant filed a complaint alleging wrongful termination by Appellee in violation of the Pennsylvania Whistleblower Law.  Appellant alleged that Appellee hired him on August 16, 2017, as the Director of Employer Relations.  Appellant's offer of employment contained a six-month provisional period to demonstrate acceptable performance.  In December

---

[1] Act of December 12, 1986, P.L. 1559, §§ 1–8, codified at 43 P.S. §§ 1421–1428.

2017, Appellant began compiling data on a tiering program for employers and discovered that while his data reflected 8,000 jobs had been posted in the fall of 2017, Appellee had represented that it posted more than 21,000 jobs in that time, counting the same job postings multiple times. Specifically, Appellant alleged that Appellee was counting re-postings of the same jobs as "new" postings and counting different departments within the same employer as different employers to inflate Appellee's on-campus interview figures. Appellant reported these discrepancies to his supervisor, Lori Kennedy, in December 2017. Appellant alleged that Ms. Kennedy rejected the data because it was in the wrong template. Appellant further claimed that Ms. Kennedy's attitude toward him changed after he reported the discrepancies.

On February 13, 2018, prior to the end of the provisional employment period, Appellee terminated Appellant's employment, citing Appellant's alleged failure to make behavioral changes, concerns over interactions with the team, and a failure to adhere to office protocol, as its reasons for Appellant's termination.

Appellant further alleged that the reasons Appellee stated as grounds for Appellant's termination were pretextual. Appellant maintained that Appellee terminated his employment because he reported a wrongdoing. Specifically, Appellant averred that Appellee's misreporting in the figures relating to job postings and on-campus interviews violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Appellant

alleged that Ms. Kennedy's actions in failing to rectify the reported figures, and in firing Appellant for having reported the error constitute a violation of the Pennsylvania Whistleblower Law.

On January 11, 2021, Appellee filed a motion for summary judgment. Specifically, Appellee claimed that Appellant did not make a good faith report of wrongdoing or waste, and that Appellant failed to establish a causal connection between his report of wrongdoing and his termination. The court heard argument on the motion for summary judgment on March 15, 2022. On March 30, 2022, the court granted Appellee's motion for summary judgment and dismissed Appellant's complaint with prejudice. Appellant filed a timely notice of appeal on April 20, 2022. On April 22, 2022, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant complied on May 11, 2022.

Appellant raises the following questions on appeal:

> 1. The [trial] court applied the wrong causation analysis and standard to Appellant's *prima facie* case.
>
>> A. Did the [trial] court fail to apply the correct standard of proof and burden of proof for a case centered on the Pennsylvania Whistleblower law?
>>
>> B. Did the [trial] court fail to correctly apply the proper causation framework to Appellant's *prima facie* case analysis?
>>
>> C. Did the [trial] court fail to properly apply the **McDonnell-Douglas Corp. v Green**, 411 U.S. 792[, 93 S.Ct. 1817, 36 L.Ed.2d 668] (1973) causation standard to Appellant's *prima facie* case regarding the

causation element?

D. Did the [trial] court fail to consider Appellant[']s circumstantial evidence of pretext as a whole and in context related to the *prima facie* causation analysis and burden of Appellant related to same?

2. The [trial] court improperly applied the summary judgment standard in view of the record in this case.

A. Did the [trial] court err when it weighed the evidence and/or made credibility determinations, resolving disputes in favor of [Appellee] and/or not weighing the evidence and all inferences therefrom in the manner most favorable to Appellant, at the summary judgment phase?

3. …Appellant sufficiently established the other non-causation elements of his case for purposes of overcoming summary judgment.

A. Did Appellant[] establish all the other (non-causation) elements of his Whistleblower case, sufficiently to overcome a summary judgment motion?

B. With regard to the Whistleblower Law, does the Pennsylvania Unfair Trade Practice and Consumer Protection law constitute a Pennsylvania statute and state the policy of Pennsylvania?

(Appellant's Brief at 7-10) (unnecessary capitalization omitted).

Our Supreme Court has clarified our role on appellate review in this case as follows:

On appellate review, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To

the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Valley National Bank v. Marchiano*, 221 A.3d 1220, 1222 (Pa.Super. 2019)

(quoting *Summers v. Certainteed Corp.*, 606 Pa. 294, 307, 997 A.2d 1152,

1159 (2010)).  Our scope of review is plenary.  *Pappas v. Asbel*, 564 Pa.

407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct.

2618, 153 L.Ed.2d 802 (2002).

In reviewing a trial court's grant of summary judgment,

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action.  Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.  In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to

make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

In his first issue, Appellant argues the trial court erred in its analysis regarding whether Appellant presented a *prima facie* case of a violation of the Whistleblower Law. Appellant asserts the court should have applied the pretext standard set forth in ***McDonnell-Douglas*** for determining causation. Appellant insists that under this standard, his burden was only to show evidence that the protected reporting was the likely reason for his termination. Appellant claims the trial court ignored the broad circumstantial evidence of pretext, and instead focused on its interpretation of the statements from his supervisor. Appellant concludes summary judgment was inappropriate, and this Court must grant relief. We disagree.

"The Whistleblower Law provides protection for employees of a public employer who report a violation or suspected violation of state law." ***Greco v. Myers Coach Lines, Inc.***, 199 A.3d 426, 430-31 (Pa.Super. 2018), *appeal denied*, 652 Pa. 309, 208 A.3d 462 (2019) (quoting ***Bailets v. Pennsylvania Tpk. Comm'n***, 633 Pa. 1, 13, 123 A.3d 300, 307 (2015)). Specifically, the law provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's…privileges of employment because the

- 6 -

employee…makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a).

To prove a violation of the Whistleblower Law, an employee "must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee…had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. § 1424(b). "[A]n employer may defend a whistleblower claim if it 'proves by a preponderance of the evidence' that it fired the employee for 'separate and legitimate reasons, which are not merely pretextual.'" *Greco, supra* at 431 (quoting 43 P.S. § 1424(c)).

Instantly, the trial court explained that the *McDonnell-Douglas* burden-shifting test is not applicable in the context of a Whistleblower Law complaint. (*See* Trial Court Opinion, 5/17/22, at 2). The court noted that the *McDonnell-Douglas* test applies in cases of employment discrimination based on race, sex, or disability, and no such claim was made in this case. The court stated that in ruling upon the motion for summary judgment it applied the test set forth in *Golaschevsky v. Commonwealth, Department of Environmental Protection*, 554 Pa. 157, 720 A.2d 757 (1998), and *Evans v. Thomas Jefferson University*, 81 A.3d 1062 (Pa.Cmwlth. 2013), which the court explained are applicable in the context of Whistleblower Law

claims.[2]

In **Golaschevsky, supra**, our Supreme Court considered whether an employee demonstrated a causal connection sufficient to establish a *prima facie* case of retaliatory discharge under the Whistleblower Law. There, the Court explained:

> [T]o make out a *prima facie* case of retaliatory termination pursuant to the Whistleblower Law, a plaintiff must "show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed." [**Gray v. Hafer**, 651 A.2d 221, 225 (Pa.Cmwlth. 1994), *affirmed per curiam*, 542 Pa. 607, 669 A.2d 335 (1995)].

**Golaschevsky, supra** at 163, 720 A.2d at 759. Applying that standard, the Court found that the appellant did not present sufficient evidence to establish a causal connection because he did not "allege that his supervisors threatened to fire him or to impose any other adverse consequences because of his report, nor does he establish any other 'concrete facts' to connect the report with the dismissal." **Id.** The Court rejected the appellant's reliance "solely on vague and inconclusive circumstantial evidence" holding that without concrete evidence showing a causal connection between his report and his subsequent termination, he cannot establish a *prima facie* case of retaliatory discharge

---

[2] We may look to the Commonwealth Court's decisions for guidance, albeit not as binding precedent. **Greco, supra** at 432 (citing **Ford v. Ford**, 878 A.2d 894, 900 (Pa.Super. 2005)).

pursuant to the Whistleblower Law. ***Id.*** at 162-63, 720 A.2d at 759. ***See also Evans, supra*** (applying ***Golaschevsky*** and requiring that causal connection must be demonstrated by concrete facts that report of wrongdoing led to dismissal).

More recently, in ***Bailets, supra***, our Supreme Court explained that to obtain relief on a Whistleblower Law claim, an individual must establish by a preponderance of the evidence that he made a report of wrongdoing to the employer, and that he was fired due to these reports. ***Bailets, supra*** at 14, 123 A.3d at 308. Relying on ***Golaschevsky, supra*** and ***Gray, supra***, our Supreme Court reiterated that the individual presenting such claim:

> has to show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to his dismissal, such as that there was specific direction or information he received not to file the report or there would be adverse consequences because the report was filed.

***Bailets, supra*** at 14, 123 A.3d at 308 (internal citations and quotation marks omitted).

Here, we see no error in the court's application of the "concrete facts" standard in evaluating the instant Whistleblower Law violation claim. ***See id.***; ***Golaschevsky, supra***; ***Evans, supra***. Although Appellant disagrees with the trial court's application of the "concrete facts" standard, he has failed to cite any cases that apply the ***McDonnell-Douglas*** standard in evaluating

violations of the Whistleblower Law.[3]  Accordingly, Appellant's first issue merits no relief.

For purposes of disposition, we combine Appellant's remaining issues. Appellant argues that he sufficiently established the causation element of his claim.  Appellant insists he presented adequate evidence that Appellee's stated reasons for his termination were pretextual, and its actual motivation for terminating Appellant's employment was in retaliation for Appellant reporting Appellee's wrongdoing.  Appellant contends that Appellee's misreported data constituted a violation of the UTPCPL, which prohibits unfair methods of competition and unfair or deceptive acts or practices.  Appellant concludes the court erred by granting summary judgment in favor of Appellee, and this Court must grant relief.  We disagree.

"To prove a cause of action for wrongful discharge under the Whistleblower Law, the plaintiff must show both a protected report of wrongdoing or waste and a causal connection between that report and the discharge." **Evans, supra** at 1064.  A "wrongdoing" is defined as:

> A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

---

[3] Appellant alleges that **Golaschevsky, supra**, and **Gray, supra**, incorporated the **McDonnell-Douglas** standard; however, in neither case does our Supreme Court discuss **McDonnell-Douglas**.

43 P.S. § 1422.

To prove a violation of the Whistleblower Law, an individual "must demonstrate [he] made a report of some action by [his] employer or its agent, which, if proven, would constitute a violation of a law or regulation. Moreover, the report must be of an actual violation, not a potential or contemplated violation." *Greco, supra* at 434.

Furthermore,

> The causal connection that the Whistleblower Law requires must be demonstrated by concrete facts or surrounding circumstances that the report of wrongdoing or waste led to the plaintiff's dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed. … The burden shifts to the defendant to show a separate and legitimate reason for its actions only where plaintiff has satisfied the threshold showing of a causal connection. [V]ague and inconclusive circumstantial evidence is insufficient to satisfy that threshold burden to show a causal connection and shift the burden to the defendant to justify its actions.

*Evans, supra* at 1070 (internal citations and quotation marks omitted).

In *Golaschevsky, supra*, the appellant claimed that he reported copyright violations to his supervisor, which "touched off a series of retaliatory actions, including negative performance evaluations, lack of cooperation from fellow employees and supervisors, withholding of information regarding computer software, and, ultimately, termination of [the a]ppellant's employment." *Golaschevsky, supra* at 163, 720 A.2d at 759-60. Nevertheless, the Court noted that this evidence was simply the appellant's

perception of how others treated him after the report. The Court explained the appellant had failed to allege that "his supervisors threatened to fire him or to impose any other adverse consequences because of his report, nor does he establish any other 'concrete facts' to connect the report with the dismissal." *Id.* at 163, 720 A.2d at 759. In the absence of "concrete evidence tending to show a causal connection between his report of alleged copyright violations and his subsequent termination," the Court decided the appellant could not establish a *prima facie* case of retaliatory discharge pursuant to the Whistleblower Law and affirmed summary judgment in favor of the appellee. *Id.* at 164, 720 A.2d at 760.

In ***Evans, supra***, the Commonwealth Court considered whether the appellant had shown a causal connection between her report of her supervisor violating a policy on administrating methadone to patients and the appellant's discharge less than a year later, for alleged "rude, intimidating, discourteous and unprofessional behavior." ***Evans, supra*** at 1067. There, the appellant argued that she could show a causal connection between the report and her discharge despite a lack of direct evidence based on the fact that the warnings for her conduct toward patients and coworkers occurred after the report, where she received a rating of "outstanding" in her review prior to the report but a lower rating of "effective" in her review a few months after the report, and based on the appellant's complaints that her supervisor treated her differently and in a hostile manner after the report. *Id.* at 1070. The ***Evans***

Court noted that "[i]n a Whistleblower Law action, the mere fact that the discharge occurred a few months after a report of wrongdoing and that the first formal negative actions by the employer occurred after the report are not enough to show a causal connection." *Id.* at 1070–71 (citing ***Golaschevsky, supra*** at 163-64, 720 A.2d at 759-60). Ultimately, the Court decided that the appellant had not established a causal connection between the report and her discharge, and therefore the burden did not shift to the appellee to justify its actions. Thus, the Commonwealth Court affirmed the summary judgment entered in favor of the appellee.

Here, the trial court found that Appellant established the first element of his *prima facie* case, proving that he made a good faith report of wrongdoing or waste. The court concluded that Appellant's report that Appellee "was improperly calculating and thereby inflating to a marked degree the number of job postings and OCI opportunities ostensibly made available to Lehigh students through its Office of Career & Professional Development…amounted to 'wrongdoing' within the meaning of the Whistleblower Law insofar as it violates the [UTPCPL]." (Trial Court Opinion, 3/30/22, at 5) (record citation omitted).

The court then considered whether Appellant brought forth sufficient evidence to support the second element—concrete evidence of a causal connection between the report of wrongdoing and the adverse employment action. The court found that Appellant did not meet his burden, and explained

its determination as follows:

> Having considered the record offered by [Appellant], we find
> that [Appellant] has failed to bring forth sufficient evidence
> to support this second element. Rather, the record on this
> issue consists merely of vague circumstantial evidence, *e.g.*
> [Appellant's] subjective contention that his supervisor, Ms.
> Kennedy, "did not like the fact that the data was revealing
> inaccurate reporting, and the relationship changed after
> that," and that "all of a sudden things got cold with [his]
> supervisor[.]" (Deposition of [Appellant], 5/25/21, 106,
> 229). As uncomfortable as a perceived shift in the
> relationship between [Appellant] and Ms. Kennedy may
> have been for [Appellant], same does not amount to
> evidence of a causal connection between [Appellant's]
> report and his eventual dismissal. Furthermore, Ms.
> Kennedy's alleged statement that [Appellee] "cannot use
> your numbers[…]that are half what they were last year" in
> no way amounts to a specific direction to [Appellant] not to
> report his data or that there would be adverse consequences
> for [Appellant] because he made such a report. *Id.* at 73.
> In fact, same does not even amount to an acknowledgement
> that [Appellant's] understanding of the data was accurate
> or that the University had been utilizing inaccurate data. As
> [Appellant] testified at his deposition, "I recall Lori
> [Kennedy] wanting me to talk to Marcia and Rich[,] to try to
> understand how they reported OCI the prior year. Because
> the numbers, as I had stated earlier, were about half what
> they were published the prior year. So Lori asked me to talk
> to Marcia and Rich. […] So they would do it in some other
> way. I don't know exactly how they did it, except that they
> did include different divisions." *Id.* at 123, 125. None of
> the testimony offered by [Appellant] nor any of the other
> testimony or exhibits offered in opposition to the motion
> amounted to *prima facie* evidence of a causal connection
> between his reports to his supervisor and his eventual
> termination. The fact that [Appellant's] termination came
> roughly two months after he made a report to his supervisor
> does not mean that there is a causal connection between
> the two. As the adage provides, correlation does not equal
> causation.

(Trial Court Opinion, 3/30/22, at 6-7). The trial court found that Appellant

failed to satisfy the threshold showing of a causal connection, and therefore did not meet his initial burden of establishing a *prima facie* case.

Our review of the record supports the court's analysis. Similar to the facts in **Golaschevsky, supra**, Appellant's allegations amount simply to a change in his perception of how others treated him after he made the report. He offers no concrete evidence, either direct or circumstantial, that would show that his report led to his dismissal. As such, we agree with the trial court that because Appellant did not satisfy that threshold burden to show a causal connection, the burden did not shift to Appellee to justify its actions. **See Golaschevsky, supra**. Therefore, the trial court applied the correct standard in evaluating the motion for summary judgment concerning Appellant's Whistleblower Law claim, and correctly concluded that Appellant could not prove the essential elements of the Whistleblower Law claim. Accordingly, we affirm the court's order granting summary judgment.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2023