**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1479
_____


ENCOMPASS INSURANCE COMPANY

Appellant
v.

STONE MANSION RESTAURANT INCORPORATED
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-17-CV-00125)
District Judge: Hon. Arthur J. Schwab

Argued: October 12, 2017


_____


Before: CHAGARES, JORDAN, FUENTES, <u>Circuit Judges</u>.

(Filed: August 22, 2018)

Joshua R. Guthridge, Esq. **[ARGUED]**
R. Sean O'Connell, Esq.
Robb Leonard Mulvihill LLP
BNY Mellon Center, Suite 2300
500 Grant Street
Pittsburgh, PA 15219

      Counsel for Appellant

Miles A. Kirshner, Esq. **[ARGUED]**
Kyle T. McGee, Esq.
Margolis Edelstein
535 Smithfield Street, Suite 1100
Pittsburg, PA  15222

      Counsel for Appellee

———————

OPINION

———————

CHAGARES, <u>Circuit Judge</u>.

This appeal, which presents issues of statutory interpretation, stems from a tragic automobile crash that killed the intoxicated driver and seriously injured the sole passenger. Encompass Insurance Company ("Encompass"), the liability carrier for the vehicle, settled the passenger's claims against the driver's estate and all other possible parties, including Stone Mansion Restaurant Incorporated ("Stone Mansion") — the restaurant that allegedly overserved the driver. Thereafter,

2

Encompass brought the instant action against Stone Mansion in Pennsylvania state court, seeking contribution under state law. Stone Mansion removed the case to the United States District Court for the Western District of Pennsylvania. Following a dispute over removal, the District Court concluded that the case was properly before it and later dismissed the case pursuant to Federal Rule of Civil Procedure 12(b)(6). Encompass appeals both the decision on the removal and the dismissal. For the reasons stated below, we will affirm in part and reverse in part.

I.

On the night of March 20 and the early morning of March 21, 2011, Brian Viviani attended an event at Stone Mansion, a restaurant in Pittsburgh, Pennsylvania. The restaurant allegedly furnished him with alcohol until he became intoxicated and then continued to serve him alcohol. Thereafter, Viviani left Stone Mansion and drove away in an automobile with Helen Hoey, who had hosted the event. After Viviani drove a short distance, the vehicle struck a guardrail and flipped onto its roof, killing him and causing Hoey significant injury.

Hoey filed a civil action against Viviani's estate on July 25, 2013, in the Court of Common Pleas of Allegheny County, Pennsylvania. She alleged that the accident occurred because Viviani was driving while intoxicated. His estate tendered the defense against the lawsuit to Encompass, which was at all relevant times the liability insurance carrier for the vehicle. Encompass reached a settlement agreement with Hoey, whereby it paid her $600,000 and she released her claims against all possible defendants.

3

Encompass, a citizen of Illinois, then brought the instant action against Stone Mansion, a Pennsylvania corporation, in the Court of Common Pleas of Allegheny County. Encompass alleged that: (1) it stands in the shoes of the insured, Viviani's estate; (2) Stone Mansion served Viviani alcohol while he was visibly intoxicated; (3) "[u]nder Pennsylvania's Dram Shop law, a business or individual who serves alcohol to a visibly intoxicated person is legally responsible for any damage that person might cause"; and (4) as a joint tortfeasor under the Uniform Contribution Among Tort-feasors Act ("UCATA"), Stone Mansion is liable to Encompass for contribution. Appendix ("App.") 36–44.

In email correspondence between counsel for Encompass and for Stone Mansion, counsel for Stone Mansion agreed to accept electronic service of process instead of requiring formal service. Specifically, counsel for Stone Mansion informed counsel for Encompass that "[i]n the event your client chooses to file suit in this matter, I will be authorized to accept service of process" and that "if and when you do file, provide your Complaint to me along with an Acceptance form."[1] App. 85. Minutes later, counsel for Encompass replied in relevant part, "Thank you . . . for agreeing to accept service." Id. On January 23, 2017, Encompass sent Stone Mansion a copy of the filed complaint

---

[1] In lieu of the usual manner of service, Pennsylvania's Rules of Civil Procedure permit a "defendant or his authorized agent [to] accept service of original process by filing a separate document" that is "substantially in the [provided] form." Pa. R. Civ. P. 402(b). The form provided contains a caption, the heading "Acceptance of Service," and a brief statement that the undersigned accepts service and is authorized to do so.

4

and a service acceptance form via email. Counsel for Stone Mansion replied, "I will hold the acceptance of service until I get the docket n[umber]." App. 92. That same day, Encompass provided the docket number; however, Stone Mansion did not return the acceptance form. App. 95, 99. Instead, on January 26, counsel for Stone Mansion responded:

> Thank you for your patience in this regard. . . . I want to explain why I have not yet returned the Acceptance of Service form.
>
> Noting that there is diversity of citizenship, and an amount in controversy in excess of $75,000, we are considering removing this action to federal court. While 28 USC [sic] §1441(b) generally prevents a resident defendant from removing an action to federal court in its own state, the language of the statute precludes such removal when a resident defendant has been "properly joined and served". We are aware of an opinion from Chief Judge Conti in the Western District of PA, interpreting this to mean that a resident defendant can remove prior to being served.
>
> I fully acknowledge having agreed prior to your filing suit that we will accept service. I maintain that agreement, but because it may affect our client's procedural ability to remove the case, I have to hold off doing so until after the Notice of Removal is filed. I expect this will happen in the next one or two days. Happy to discuss this with you over the phone if you desire.

App. 99.

Thereafter, prior to formal acceptance, Stone Mansion timely removed the matter to the United States District Court for the Western District of Pennsylvania. Encompass filed a motion to remand the matter to the Pennsylvania state trial court on the grounds that removal was improper pursuant to the forum defendant rule; however, the District Court denied the motion. The District Court concluded that the forum defendant rule does not apply because it precludes removal only "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought" and because Stone Mansion's counsel "did not accept service of [Encompass'] Complaint until after [it] filed a Notice of Removal." App. 3–4 (quoting 28 U.S.C. § 1441).

Stone Mansion then moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), arguing that Pennsylvania's Dram Shop law establishes liability for liquor licensees only "in favor of third persons on account of damages inflicted upon them" and that neither Encompass nor the estate of Viviani are in that class of persons. App. 104–08. The District Court granted the motion to dismiss with prejudice, noting:

> The plain, unambiguous reading of [the Dram Shop law] indicates that a licensee, such as Stone Mansion, is liable only to third persons (Hoey in this case), for damages inflicted upon the third person — off the licensee's premises — by a customer of the licensee (Viviani in this case), but only when the licensee furnishes that customer (Viviani) with alcohol when he was

6

visibly intoxicated. [The Dram Shop law], with its limited scope, indicates that Stone Mansion may have been liable to Hoey — depending upon whether Stone Mansion served Viviani alcohol while he was visibly intoxicated. Encompass' Complaint establishes that Encompass is acting as if it were Viviani in order to recover under Pennsylvania's Uniform Contribution Among Tortfeasors Act. Because the[r]e is no potential cognizable claim under [the Dram Shop law] as between Viviani/Encompass and Stone Mansion, there is likewise no claim for contribution, and thus, Stone Mansion's Motion to Dismiss will be granted.

App. 16. Encompass then filed a motion for reconsideration, arguing that it was not proceeding under the Dram Shop law, but rather the UCATA. Encompass contended that it had included the Dram Shop law in its complaint and previous briefings "only to establish that the Stone Mansion was a joint tortfeasor in the action brought by Hoey — i.e. a person jointly or severally liable in tort." App. 150. The District Court denied the motion for reconsideration, noting that the relevant provision of the Dram Shop law "<u>limits</u> a liquor licensee's liability, whereas Encompass' argument sought to <u>expand</u> a licensee's liability." App. 20. Encompass timely filed a notice of appeal.

II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332. Because the District Court's dismissal of the action and denial of the motion for reconsideration constitute

7

final decisions, this Court has appellate jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over the denial of a motion to remand to the extent that the underlying basis is a legal question. . . ." Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 287 (3d Cir. 2010). We likewise exercise plenary review of a motion to dismiss pursuant to Rule 12(b)(6). Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016). We must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

## III.

On appeal, Encompass raises two issues: (1) whether the District Court erred in denying Encompass' motion to remand the matter to the Pennsylvania state trial court; and (2) whether the District Court erred in dismissing the matter.

## A.

We first consider whether the District Court erred in denying Encompass' motion to remand this case to the Pennsylvania state trial court. Removal of state court actions to federal district court is governed by 28 U.S.C. §§ 1441–55. The general removal statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State

8

court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Where federal jurisdiction is premised only on diversity of the parties, the forum defendant rule applies. That rule provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Id. § 1441(b)(2). This Court has long held that the forum defendant rule is procedural rather than jurisdictional, except where "the case could not initially have been filed in federal court." Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995); see also Roxbury Condo. Ass'n v. Anthony S. Cupo Agency, 316 F.3d 224, 227 (3d Cir. 2003).

1.

Encompass first argues that the District Court misinterpreted the forum defendant rule, ignoring its intent and construing it "in a manner that necessarily would create a nonsensical result that Congress could not have intended." Encompass Br. 11. When interpreting a statute, we "must begin with the statutory text." United States v. Moreno, 727 F.3d 255, 259 (3d Cir. 2013). "It is well-established that, '[w]here the text of a statute is unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will

9

justify a departure from that language.'" McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 170 (3d Cir. 2015) (quoting Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 302 (3d Cir. 2011)). Nevertheless, it is also a "basic tenet of statutory construction . . . that courts should interpret a law to avoid absurd or bizarre results." In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006); see also Moreno, 727 F.3d at 259 (noting that "[w]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the te[x]t is not absurd — is to enforce it according to its terms" (quoting Lamie v. United States Tr., 540 U.S. 526, 534 (2004)). An absurd interpretation is one that "defies rationality or renders the statute nonsensical and superfluous." Moreno, 727 F.3d at 259 (quoting United States v. Fontaine, 697 F.3d 221, 228 (3d Cir. 2012)).

Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served. Thus, it remains for us to determine whether there has been a "most extraordinary showing of contrary intentions" and consider whether this literal interpretation leads to "absurd or bizarre results."[2]

---

[2] We note that district courts that have considered application of the forum defendant rule to pre-service removal are split on the issue. Compare, e.g., Parker Hannifin Corp. v. Fed. Ins. Co., 23 F. Supp. 3d 588, 596 (W.D. Pa. 2014) (concluding that "the forum defendant rule does not apply to this case because plaintiffs failed to properly serve [the in-state defendant] prior to removal of this case to federal court"); Valido-Shade v. Wyeth, LLC, 875 F. Supp. 2d 474, 478 (E.D.

We therefore turn to section 1441, which contains the forum defendant rule. Section 1441 exists in part to prevent favoritism for in-state litigants, Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 499 (3d Cir. 1997), and discrimination against out-of-state litigants, McSparran v. Weist, 402 F.2d 867, 876 (3d Cir. 1968). The specific purpose of the "properly joined and served" language in the forum defendant rule is less obvious. The legislative history provides no guidance; however, courts and commentators have determined that Congress enacted the rule "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." Arthur Hellman, et al., Neutralizing the Strategem of "Snap Removal": A Proposed Amendment to the Judicial Code, 9 Fed. Cts. L. Rev. 103, 108 (2016) (quoting Sullivan v. Novartis Pharms. Corp., 575 F. Supp. 2d 640, 645 (D.N.J. 2009)); see also Goodwin v.

---

Pa. 2012) (applying the plain meaning of § 1441(b), permitting pre-service removal by an in-state defendant, and noting that if the consequences of this result are "deemed to be bad public policy, the remedy lies with Congress which, subject to constitutional limitations, controls the scope of this court's subject matter jurisdiction and any right of removal"); with, e.g., Sullivan v. Novartis Pharms. Corp., 575 F. Supp. 2d 640, 641–43, 654 (D.N.J. 2008) (concluding that literal interpretation of the forum defendant rule would lead to an absurd result and remanding the matter); Vivas v. Boeing Co., 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007) (remanding the matter on the basis that "to allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes").

Reynolds, 757 F.3d 1216, 1221 (11th Cir. 2014) (noting the same).

Citing this fraudulent-joinder rationale, Encompass argues that it is "inconceivable" that Congress intended the "properly joined and served" language to permit an in-state defendant to remove an action by delaying formal service of process. Encompass Br. 13–14. This argument is unavailing. Congress' inclusion of the phrase "properly joined and served" addresses a specific problem — fraudulent joinder by a plaintiff — with a bright-line rule. Permitting removal on the facts of this case does not contravene the apparent purpose to prohibit that particular tactic.[3] Our interpretation does not defy rationality or render the statute nonsensical or superfluous, because: (1) it abides by the plain meaning of the text; (2) it envisions a broader right of removal only in the narrow circumstances where a defendant is aware of an action prior to service of process with sufficient time to initiate removal;[4] and

---

[3] We are also mindful of the Supreme Court's direction that "by interpretation we should not defeat" Congress' purpose of abridging the right of removal. See La Chemise Lacoste v. Alligator Co., 506 F.2d 339, 344 (3d Cir. 1974) (quoting Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 12 (1951)). However, as we determined in a related context, we conclude that this general rule is "not sufficient to displace the plain meaning" of the statute. Delalla v. Hanover Ins., 660 F.3d 180, 189 (3d Cir. 2011) (considering language pertaining to procedure for removal in 28 U.S.C. § 1446(b)).

[4] We are aware of the concern that technological advances since enactment of the forum defendant rule now permit litigants to monitor dockets electronically, potentially giving defendants an advantage in a race-to-the-courthouse

(3) it protects the statute's goal without rendering any of the language unnecessary. Thus, this result may be peculiar in that it allows Stone Mansion to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result.

In short, Stone Mansion has availed itself of the plain meaning of the statute, for which there is precedential support. Encompass has not provided, nor have we otherwise uncovered, an extraordinary showing of contrary legislative intent. Furthermore, we do not perceive that the result in this case rises to the level of the absurd or bizarre. There are simply no grounds upon which we could substitute Encompass' interpretation for the literal interpretation. Reasonable minds might conclude that the procedural result demonstrates a need for a change in the law; however, if such change is required, it is Congress — not the Judiciary — that must act.

2.

We next consider whether the District Court erred by declining to remand the matter on grounds of preclusion. Again, we conclude that it did not. Encompass argues that

---

removal scenario. However, the briefs fail to address this concern, let alone argue that the practice is widespread. If a significant number of potential defendants (1) electronically monitor dockets; (2) possess the ability to quickly determine whether to remove the matter before a would-be state court plaintiff can serve process; and (3) remove the matter contrary to Congress' intent, the legislature is well-suited to address the issue.

13

because Stone Mansion had agreed to accept service electronically, it was precluded from arguing for removal on grounds of incomplete service of process. Encompass Br. 18. Encompass suggests that Stone Mansion's "assurances . . . that it would accept service were the only reason that Encompass did not take steps to have Stone Mansion served by sheriff pursuant to the Pennsylvania Rules of Civil Procedure" and argues that Stone Mansion itself caused the lack of service. Encompass Br. 19; Encompass Reply Br. 10. Stone Mansion argues that although it agreed to accept electronic service, it never indicated that it "would not avail itself of federal jurisdiction." Stone Mansion Br. 37.

We are mindful, as Encompass points out in its briefs, that the Pennsylvania Rules of Professional Conduct prohibit lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," Pa. Rules of Prof. Conduct 8.4; however, we need not pass judgment on whether Stone Mansion violated this rule, because Encompass has failed to provide any support for the proposition that Stone Mansion's conduct carried preclusive effect. We also discount Encompass' unsupported argument that Stone Mansion's agreement to <u>accept</u> service (the Pennsylvania state court method) rather than to <u>waive</u> service (the federal court method) required it to submit to state court jurisdiction. Finally, we conclude that Encompass' position is not saved by its emphasis on the District Court's finding that Stone Mansion agreed to accept service of a <u>state court</u> complaint. By its nature, removal of a matter from state to federal court presupposes the existence of a state court complaint. Stone Mansion's statements of its willingness to accept electronic service did not include language regarding its position on jurisdiction and removal. For these reasons, we are unconvinced that Stone

14

Mansion's conduct — even if unsavory — precludes it from arguing that incomplete service permits removal. As a result, the District Court's order denying Encompass' motion to remand will be affirmed.

## B.

Having determined that the case was properly removed to federal court, we turn next to whether the District Court erred in granting Stone Mansion's motion to dismiss. As noted above, the District Court dismissed the claim because it concluded that "the[r]e is no potential cognizable claim under [the Pennsylvania Dram Shop law] as between Viviani/Encompass and Stone Mansion," and, as a result, "there is likewise no claim for contribution." App. 16. Encompass argues that the UCATA provides for contribution among joint tortfeasors, and that the language of the Dram Shop law does not preclude recovery for contribution.

In relevant part, the UCATA establishes that, as a general rule, "[t]he right of contribution exists among joint tort-feasors." 42 Pa. Cons. Stat. § 8324(a). The statute also provides that "[a] joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement." Id. § 8324(c). The Dram Shop law addresses a more specific area of state law, providing:

> No licensee shall be liable to third persons on account of damages inflicted upon them off of the licensed premises by customers of the licensee unless the customer who inflicts the damages was sold, furnished or given liquor or

> malt or brewed beverages by the said licensee or
> his agent, servant or employee when the said
> customer was visibly intoxicated.

47 Pa. Stat. and Cons. Stat. § 4-497.  In Pennsylvania, "[a] violation of [the Dram Shop law] is deemed negligence per se." Johnson v. Harris, 615 A.2d 771, 775 (Pa. Super. Ct. 1992); see also Detwiler v. Brumbaugh, 656 A.2d 944, 946 (Pa. Super. Ct. 1995) (noting that § 4-497 does not create a cause of action, but rather limits the licensee's liability for breach of a duty "to refrain from selling liquor to a visibly intoxicated individual").

On appeal, Stone Mansion argues that Encompass is outside the "class of persons that Section 4-497 was designed to protect."  Stone Mansion Br. 22.  It relies primarily upon Juszczyszyn v. Taiwo, 113 A.3d 853 (Pa. Super. Ct. 2015) in support of that argument.  That opinion, however, is inapposite. The plaintiff in Juszczyszyn, a police officer who was injured when he confronted an intoxicated patron in a bar, sought recovery under § 4-497, not contribution under the UCATA. Unlike that officer, Encompass does not claim that it suffered an injury compensable under § 4-497, but rather contends that Stone Mansion's status as a joint tortfeasor in Hoey's injury makes Stone Mansion responsible for contribution under the UCATA.  Thus, the officer in Juszczyszyn is not analogous to Encompass in this litigation.

By its plain language, § 4-497 limits the liability of liquor licensees in a specific manner:  third persons like Hoey, having been injured by a customer of the licensee, can only recover from the licensee if it served alcohol to that customer when he or she was visibly intoxicated.  Nothing in that language shields licensees from responsibility for contribution

16

among joint tortfeasors for the harm caused to protected third-parties. It does not matter that Encompass is not in the class of third parties envisioned in § 4-497 of the Dram Shop law. Encompass is not seeking to recover against Stone Mansion under § 4-497. Instead, because Encompass' settlement agreement with Hoey extinguished Stone Mansion's potential liability to her, Encompass is entitled to pursue a contribution claim against Stone Mansion under the UCATA.

As the Pennsylvania Superior Court has noted:

The focus of the [UCATA] is on the relationship existing between tortfeasors rather than the manner in which several tortfeasors have been held liable to an injured claimant. In <u>Puller v. Puller</u>, [] 110 A.2d 175, 177 (1955), the [Pennsylvania] Supreme Court observed that "contribution is not a recovery for the tort . . . [,] but the enforcement of an equitable duty to share liability for the wrong done." <u>Thus, a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff.</u> So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [UCATA] to deny that

17

> party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

Svetz v. Land Tool Co., 513 A.2d 403, 407 (Pa. Super. Ct. 1986) (emphasis added) (citations omitted). On these facts, equity demands — and the Dram Shop Law does not prevent — the possibility of contribution from the licensee to the insurer of the intoxicated customer. This will encourage insurers to settle claims and incentivize licensees to serve alcohol responsibly, which will benefit Pennsylvania's citizens and promote the Dram Shop law's aim of protecting society from the negligent service of alcohol.

In conclusion, Encompass does not argue that it is entitled to recovery in tort against Stone Mansion. Such a claim would likely fail pursuant to § 4-497's limiting provision. Instead, Encompass presents a distinct claim for contribution under the UCATA. Pennsylvania's Dram Shop law does not prohibit this manner of recovery. Therefore, the District Court erred by dismissing the case.

IV.

For the foregoing reasons, we will affirm in part and reverse in part.

18