**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3567

_____

JOHN CORSALE; DAVID TAYLOR, Individual
and on behalf of all others similarly situated,
Appellants

v.

SPERIAN ENERGY CORPORATION

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:18-cv-00996)
District Judge:  Honorable Marilyn J. Horan

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 18, 2020

_____

Before:  SMITH, <u>Chief Judge</u>, CHAGARES, and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 23, 2020)

_____

OPINION*

_____

---

\* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

John Corsale and David Taylor (the "plaintiffs") brought this putative class action alleging that Sperian Energy Corporation ("Sperian") breached its electricity supply contracts by setting retail prices that did not track prices in the local wholesale market. The District Court granted Sperian's motion to dismiss for failure to state a claim upon which relief can be granted, holding that Sperian's contracts with the plaintiffs did not obligate it to set its retail prices based on local wholesale prices. For the following reasons, we will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. When Pennsylvania deregulated its electricity markets in the 1990s, a number of electric generation suppliers ("EGSs") entered the market. EGSs act as middlemen, buying electricity from generators and selling it to consumers. Policymakers hoped that EGSs would use innovative purchasing strategies — such as buying electricity in advance — to compete with local utility monopolies on retail prices. Angling for lower prices, the plaintiffs contracted with Sperian, an EGS based in Texas. But the plaintiffs allege that their anticipated savings never materialized: Sperian's variable rate electricity prices were consistently — and often substantially — higher than those charged by the plaintiffs' local utility companies.

When the plaintiffs first contracted with Sperian, they agreed to Sperian's Initial Terms and Conditions (the "Initial Terms"). The Initial Terms provided for a three-month teaser period during which Sperian charged a low, fixed monthly rate. The

2

plaintiffs were free to cancel at any time after these three months; but, if they chose not to, then after the teaser period ended, the plaintiffs would be automatically enrolled in a variable rate plan. The Initial Terms included the following provision describing the variable rate plan:

> The price for our Month to Month variable product will be calculated monthly and may change each month in response to market fluctuations based on several conditions including the wholesale electricity prices in [the local wholesale market]. Sperian Energy's price may be higher or lower than the [local utility company's] rate in any given month.

Appendix ("App.") 28.

Prior to the end of the three-month teaser period, Sperian sent the plaintiffs the Updated Terms and Conditions (the "Updated Terms") governing their post-teaser period services. The plaintiffs did not cancel at the end of the teaser period, so they were automatically enrolled in the variable rate plan. The Updated Terms included the following provision:

> If you select a variable product, the price will be calculated monthly and may change each month in response to market fluctuations and conditions at the discretion of Sperian Energy. Sperian Energy's price may be higher or lower than the [local utility company's] rate in any given month.

App. 331. Under the variable rate plan, the plaintiffs consistently paid higher prices than those charged by their local utility companies.

Disgruntled, the plaintiffs sued Sperian for breach of contract and unjust enrichment. Sperian filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and, rather than contest the motion, the plaintiffs filed an amended complaint, which added an alleged violation of a state consumer protection law but did not

3

meaningfully alter the breach of contract claim.  Sperian filed another motion to dismiss under Rule 12(b)(6), and the District Court granted it.  The District Court held that the Updated Terms constituted the operative contract, but, regardless, neither the Initial Terms nor the Updated Terms included language that imposed a duty on Sperian to set its prices based on local wholesale market prices.  The District Court dismissed the breach of contract claim with prejudice, concluding that allowing the plaintiffs to amend the claim would be futile.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2), and we have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's order granting Sperian's motion to dismiss.  Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147, 151 (3d Cir. 2018).  In reviewing an order dismissing a complaint under Rule 12(b)(6), we apply the same standard as the District Court; that is, we "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Id. (quoting Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016)).

## III.

To state a claim for breach of contract under Pennsylvania law,[1] a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  CoreStates Bank, N.A. v. Cutillo,

---

[1] The parties agree that Pennsylvania law applies to this case, as do we.

4

723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

The plaintiffs argue that Sperian's contracts obligated it to base its variable rate "on market conditions and fluctuations, including . . . [local] wholesale electricity prices" and that Sperian breached this duty by failing to do so. Plaintiffs Br. 18. At the very least, the plaintiffs assert that the contract language is ambiguous, and so their claim should not be decided on a motion to dismiss. The plaintiffs also argue that the District Court should not have dismissed their claim with prejudice because they never had an opportunity to amend based on the District Court's holding that the Updated Terms constitute the operative contract.

Sperian responds that the Updated Terms expressly state that prices "may change" in response to "market fluctuations and conditions <u>at the discretion of Sperian</u>" — language which does not impose a duty on Sperian to set its prices based on local wholesale prices. Sperian Br. 19 (quoting App. 331 (Updated Terms)). Sperian also asserts that the District Court properly dismissed the breach of contact claim with prejudice because the plaintiffs did not ask for leave to amend and the District Court reasonably concluded that amendment would be futile.

We agree with the District Court that neither the Initial Terms nor the Updated Terms imposed a duty on Sperian to set its prices based on local wholesale prices. Both the Initial Terms and the Updated Terms include permissive, rather than mandatory, language regarding price setting. App. 28 (Initial Terms) ("[T]he price for our Month to Month variable product will be calculated monthly and may change each month . . . ."); App. 331 (Updated Terms) ("If you select a variable product, the price will be calculated

5

monthly and may change each month . . . ."). Both the Initial Terms and the Updated Terms provide that Sperian's prices may be higher or lower than the local utility company's prices in any given month. And the Updated Terms provide that prices may change in response to market conditions "at Sperian's discretion." App. 331. This language does not obligate Sperian to base its prices on prices in the local wholesale market, and therefore, its failure to do so cannot constitute a breach of contract.[2]

Finally, "in ordinary civil litigation" a district court may "enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007). The plaintiffs did not properly request leave to amend here, see id. at 252, and so the District Court did not abuse its discretion in not granting leave to amend sua sponte. Furthermore, because neither the Initial Terms nor the Updated Terms imposed a duty on Sperian to set retail prices based on local wholesale prices, allowing the plaintiffs to amend their complaint to assert the same breach of contract claim based on the Updated Terms would be futile.

---

[2] The plaintiffs also contend that Sperian breached its implied duty of good faith and fair dealing by "abusing its discretion in setting prices at extraordinary [sic] high levels." Plaintiffs Br. 32. Although every contract under Pennsylvania law imposes a duty of good faith and fair dealing in the performance and enforcement of the contract, see J.J. DeLuca Co. v. Toll Naval Assocs., 56 A.3d 402, 412 (Pa. Super. Ct. 2012), the plaintiffs forfeited the argument that Sperian breached this duty because the plaintiffs failed to assert it in their amended complaint. Regardless, the implied duty does not displace the clear terms of the parties' written agreement, see, e.g., USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 439 (3d Cir. 1993), which do not constrain Sperian's price setting in this way.

## IV.

For these reasons, we will affirm the District Court's judgment.