**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3104
_____

KATHERINE A. LOMASKIN,
Appellant

v.

SIEMENS MEDICAL SOLUTIONS USA, INC.
doing business as Siemens-Healthineers
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:18-cv-04257)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 15, 2020
_____

Before:  CHAGARES, PORTER, and FISHER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 17, 2020)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Katherine A. Lomaskin brought whistleblower and wrongful termination claims under Pennsylvania law against her former employer Siemens Medical Solutions USA, Inc. ("Siemens"), alleging that Siemens engaged in an improper pay-to-play scheme with Pennsylvania State University ("Penn State") and that Siemens fired her for reporting the scheme. The District Court granted Siemens' motion to dismiss, holding that Lomaskin failed to plead facts to establish that either Siemens or Penn State engaged in waste or wrongdoing — necessary elements for a whistleblower claim — and that Lomaskin did not allege that Siemens required her to do anything illegal — a necessary element for a wrongful termination claim. For the following reasons, we will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Lomaskin is a former senior-level Siemens employee who alleges that Siemens and Penn State engaged in a scheme in which Siemens would contribute donations and research funding to Penn State in return for Penn State awarding Siemens certain non-competitive, fixed-price contracts. Siemens company policy bars making gifts that could be understood as an attempt to influence a government official or offering anything of value in order to gain an unfair advantage, and Siemens charges its employees with ensuring that it and its counterparties abide by this policy. Lomaskin claims that she dutifully reported the alleged scheme to her superiors, but that her concerns were not addressed, and that, instead, she was sidelined on projects and eventually taken off the Penn State account altogether. Lomaskin reported this situation

2

to human resources, but instead of addressing her complaints, Siemens terminated her.

Lomaskin then filed this action, claiming that Siemens violated Pennsylvania's whistleblower law and wrongfully terminated her. Regarding her whistleblower claim, she alleged that both Siemens and Penn State had committed waste by trading donations for non-competitive, fixed-price contracts, and that both Siemens and Penn State had committed wrongdoing because the alleged scheme violated Siemens' internal policies. The District Court dismissed Lomaskin's original complaint without prejudice and allowed her to replead. However, the District Court did not allow Lomaskin to replead her whistleblower claim based on wrongdoing by Siemens because it held that Siemens is not a "public body" susceptible to such a claim. App. 13 (citing 43 Pa. Cons. Stat. § 1423(a)).

Lomaskin filed an amended complaint, and the District Court dismissed it again, this time with prejudice. The District Court held that Lomaskin's waste allegations failed because non-competitive, fixed-price contracts alone are not sufficient evidence of waste. It also held that Lomaskin could not allege "wrongdoing" by Siemens because Siemens is not responsible for "ensuring Penn State's compliance" with the law or Penn State's own policies. App. 14. Finally, the District Court held that Lomaskin failed to establish a claim for wrongful termination, reasoning that Pennsylvania law's public policy exception to the employment-at-will doctrine did not apply because Siemens had not required her to commit a crime, prevented her from complying with a statutory duty, or discharged her when "specifically prohibited from doing so by statute." App. 14 (quoting Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003)).

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting Siemens' motion to dismiss. Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147, 151 (3d Cir. 2018). In reviewing an order dismissing a complaint under Rule 12(b)(6), we apply the same standard as the District Court, that is, we "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. (quoting Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016)).

## III.

## A.

Pennsylvania's whistleblower law prohibits employers from retaliating against an employee who reports "to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer." 43 Pa. Cons. Stat. § 1423(a). A "public body" includes any entity "which is funded in any amount by or through" Pennsylvania or its political subdivisions. Id. § 1422. "Wrongdoing" is defined as "[a] violation . . . of a Federal or State statute or regulation, of a political subdivision ordinance or regulation[,] or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id. Finally, "waste" is "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from" Pennsylvania or its political subdivisions. Id.

4

Lomaskin argues that Siemens is a public body susceptible to a whistleblower claim based on wrongdoing because Siemens receives funds through contracts with Penn State. Although this was not in her amended complaint, she asserts that it is still a live issue because repleading it below would have been futile given the District Court's refusing to allow it. Lomaskin contends that Siemens and Penn State committed wrongdoing because the alleged pay-to-play scheme violated Siemens' corporate policies. And she claims that both Siemens and Penn State committed waste because the alleged pay-to-play scheme produced non-competitive, fixed-price contracts between them.

Siemens responds that Lomaskin waived her right to appeal whether Siemens is a public body but, regardless, Siemens is not one because it is not funded by Pennsylvania. Second, Siemens contends that Lomaskin's waste arguments fail because they are based solely on her allegations that Penn State awarded contracts to Siemens on a fixed-price, "non-competition basis," which, alone, is not evidence of waste. Siemens Br. 7. Third, Siemens asserts that Lomaskin's claim based on wrongdoing by Penn State fails because Siemens does not have the power to enforce the laws, regulations, and internal policies that bind Penn State.

We agree with the District Court that Lomaskin fails to state a viable whistleblower claim based on waste or wrongdoing by either Siemens or Penn State. First, although neither the Pennsylvania Supreme Court nor this Court has passed on the issue, the federal district courts in Pennsylvania have consistently concluded that a private entity does not qualify as a public body merely because it receives state funds

5

through contracts with public programs or government agencies. See, e.g., Grim v. May Grant Assocs., No. 18-2231, 2019 WL 358520, at \*4 (E.D. Pa. Jan. 29, 2019). We concur with these courts that the phrase "funded by or through" in 43 Pa. Cons. Stat. § 1422's definition of "public body" refers to money "specifically appropriated by a governmental unit." Id. Siemens does not receive appropriations from Pennsylvania or any of its political subdivisions, including Penn State, and so does not qualify as a public body under Pennsylvania whistleblower law.

Second, Lomaskin's sole allegation that Penn State awarded Siemens fixed-price, non-competitive contracts is insufficient to support a whistleblower claim based on waste. See Bailets v. Pa. Turnpike Comm'n, 123 A.3d 300, 308 (Pa. 2015). In Bailets, the Supreme Court of Pennsylvania acknowledged that fixed-price, non-competitive contracts "can involve waste for at least two reasons": (1) if the price is "artificially inflated for a politically-connected vendor who need not compete on a level playing field," or (2) "if the fixed-price contract includes an item . . . which then becomes the subject of a supplemental contract, the price of the supplemental contract constitutes waste." Id. Lomaskin did not plead either of these additional circumstances, nor did she identify any other reason why the fixed-price, non-competitive contracts here might involve waste.

Third, Lomaskin's whistleblower claim based on alleged wrongdoing by Penn State fails because a report of wrongdoing must relate to a violation of a law or regulation that the employer is charged with enforcing. See Rohner v. Atkinson, 118 A.3d 486, 491 (Pa. Commw. Ct. 2015); Gray v. Hafer, 651 A.2d 221, 224 (Pa. Commw. Ct. 1994), aff'd

6

669 A.2d 335 (Pa. 1995). Siemens cannot force Penn State to adhere to its corporate policies, and Siemens is not responsible for ensuring Penn State's compliance with the law or Penn State's own internal policies.

## B.

Finally, with respect to her wrongful termination claim, Lomaskin argues that the District Court improperly limited Pennsylvania's public policy exception to the employment-at-will doctrine; she claims that the exception applies whenever an employee's termination contravenes generalized public policy interests. In response, Siemens echoes the District Court's rationale in arguing that the public policy exception to the employment-at-will doctrine does not apply to Lomaskin.

We again agree with the District Court that Lomaskin fails to plead a wrongful termination claim. For Pennsylvania's public policy exception to the employment-at-will doctrine to apply, Lomaskin "must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision" that Siemens violated in terminating her. Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. Ct. 1996). Lomaskin fails to do so. Instead, she merely lists a series of tangentially related state laws that she believes provide evidence that her termination contravened public policy generally.

## IV.

For these reasons, we will affirm the District Court's judgment.