# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joel Allen                          :
                                    :
            v.                      :     No. 1253 C.D. 2017
                                    :     Argued:  March 12, 2019
City of Philadelphia and            :
Lt. Daniel McCann,                  :
                    Appellants      :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  April 9, 2019**

Appellants City of Philadelphia (City) and Lieutenant Daniel McCann (Lt. McCann) (collectively, Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), dated August 17, 2017.  The trial court entered a final judgment in favor of Appellee Joel Allen (Allen) and against Appellants in connection with Allen's claims that Appellants violated the Whistleblower Law (Law).[1]  Appellants challenge not only the trial court's August 17, 2017 order, entering a final judgment against Appellants, but also the trial court's underlying orders, dated August 4, 2017,[2] denying Appellants' motion

_____

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

[2] While the trial court's order is dated August 3, 2017, the order was not docketed until August 4, 2017.

for post-trial relief (Post-Trial Motion), and dated April 7, 2017, finding in favor of Allen and against Appellants with respect to the issue of liability. For the reasons set forth below, we reverse.

## I. BACKGROUND

The relevant facts, as found by the trial court and which the parties do not appear to dispute, are as follows. Allen worked for the Philadelphia Police Department's (Department) Mounted Patrol Unit (Mounted Unit) as a civilian hostler from 1986 to 1993 and again from October 2013 through December 2015. Upon Allen's return in October 2013, Lt. McCann was serving as commanding officer for the Mounted Unit. Police Officer Eddie Holmes (Officer Holmes), who Allen regarded as the Mounted Unit's head trainer, and Police Officer Marquise Robinson were primarily responsible for the horses' training. At that time, Allen observed a difference in training from when he had previously worked in the Mounted Unit. During his previous experience with the Mounted Unit, the head trainer would already be tending to the horses when Allen arrived to work and would continue to tend to the horses after Allen left work for the day. When he returned in October 2013, however, the horses were boarded at a commercial facility located approximately four miles from the Department's Mounted Unit's headquarters, and, as a result of this distance, Allen noticed a lack of training and supervision—*i.e.*, employees would come and go as they pleased and trainers would spend only two hours per day riding/training the horses.

Allen and the other civilian hostlers believed that, as a result of this lack of training and supervision, the horses' temperaments were being negatively affected, the horses were developing kicking and biting habits, and the horses were becoming a danger to themselves and others. Allen verbally complained to

2

Lt. McCann about what he believed to be Officer Holmes' inadequate and deficient training practices. After receiving no feedback from Lt. McCann, Allen sought advice from Sergeant Brett Conway in the Department's Internal Affairs Unit, who recommended that Allen put his complaint in writing and deliver it to Lt. McCann. On December 15, 2014, Allen prepared a written report outlining Officer Holmes' inadequate and deficient training practices and delivered the report to Lt. McCann. The report provided, in pertinent part, as follows:

> I wish to bring to your attention the policy of the head trainer [Officer] Holmes.
>
> For the past [fourteen] months that I have been with [the] Mounted [Unit] he has ridden only [two] hours a day on only Wippy [sic] or Mozart, except for O.T. and then he goes for the day.
>
> As a result, the horses are more dangerous to work around and are developing bad habits[,] *i.e.*[,] kicking, biting, cribbing, etc.
>
> I know, from [ten years] of previous service in the [Mounted] Unit and many years of working with Standardbred horses, the requirements of a trainer.
>
> Clearly what is going on here is a dereliction of duty, cruelty to animals, and criminal misconduct.

(Reproduced Record (R.R.) at 30a.) After Allen made this report, Lt. McCann and the Department subjected Allen to adverse treatment and ultimately discharged Allen from his position as a civilian hostler.

On June 12, 2015, Allen initiated this action against Appellants by filing a complaint with the trial court. Following a series of preliminary objections and a stipulation between the parties, Allen filed his Third Amended Complaint, setting forth causes of action against Appellants for violations of the Law. Allen alleged that he made a good faith written report of an instance of wrongdoing and waste within the Mounted Unit and that Appellants retaliated against and ultimately

3

discharged him as a direct result thereof. Allen sought both compensatory and non-compensatory damages. The trial court conducted a non-jury trial on the issue of liability on November 14-16, 18, and 21, 2016. Thereafter, on April 7, 2017, the trial court entered an order finding in favor of Allen and against Appellants with respect to liability. On July 20, 2017, following a two-day hearing on damages, the trial court entered an order awarding Allen the following damages: (1) $26,000 in back wages; (2) $130,000 in attorneys' fees; and (3) $100,000 in actual damages. On July 31, 2017, Appellants filed their Post-Trial Motion, seeking a judgment notwithstanding the verdict or, in the alternative, a new trial. By order dated August 4, 2017, the trial court denied Appellants' Post-Trial Motion. Subsequent thereto, on August 17, 2017, the trial court entered a final judgment in favor of Allen and against Appellants.

Appellants then appealed to this Court, and the trial court directed Appellants to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. In its 1925(a) opinion, the trial court concluded, *inter alia*, that Allen had made a good faith report of waste and wrongdoing. The trial court reasoned:

> [B]ased on his years of experience caring for and training horses, [Allen] observed what he believed to be deficiencies in the training of the horses in the Mounted [Unit]. [Allen] noticed behavioral changes in the horses and was concerned for their well-being as well as the safety of the officers and staff. [Allen] held a sincere, subjective belief that the training of the horses, under Officer Holmes' supervision, was inadequate and was creating a hazardous situation, both for the animals and the staff.
>
> Through a written statement handed to [Lt.] McCann, [Allen] alleged inappropriate use of government resources, inappropriate treatment of animals, and inappropriate supervision on the part of Lt. McCann and

the [Department]. He further alleged that this conduct had created a dangerous environment for the employees of the Mounted Unit. The [trial c]ourt did not find that [Allen] had any personal animus against Officer Holmes. Further, there is nothing in the record that suggests that [Allen] stood to gain anything from filing the complaint against [Officer] Holmes.

. . . .

. . . [Allen] complained to the supervisor in charge of the entire operations of the entity in question. [Lt.] McCann is the "buck stops here" supervisor in charge of the operations of the Mounted [Unit]. Therefore, [Allen's] complaint to Lt. McCann about the training and temperament of the horses amounted to a good faith complaint of waste and wrongdoing. The care and safety of the horses most certainly is the activity that [Lt.] McCann is charged to enforce.

. . . .

. . . [Allen] made a complaint of a regular occurrence. He complained that the trainers, primarily responsible for the safe training of the horses assigned to [the Mounted Unit], were spending very little time with the horses. After spending minimal daily time at the rented stables where the horses were housed, the trainers would leave for the day. *[Allen's] very clear complaint was that the trainers were not performing their assigned task on a regular basis and therefore payment of their salary amounted to misuse of state funds.*

Although he only needs to prove that he has filed a good faith complaint of wrongdoing or waste, [Allen] has proven by a preponderance of the evidence that he filed a good faith complaint of both. [Allen] was in a unique position to observe effective and safe training (the training in the [o]ld Mounted [Unit]) and ineffective and dangerous training (the training in the [n]ew Mounted Unit) and compare the two. This led him to conclude that taxpayer's [sic] dollars were being wasted. To his eventual detriment, [Allen] brought his complaint forward so that a proper review and, if necessary, changes could be made.

(Trial Ct. Op. at 11-13 (emphasis added).)

5

## II. DISCUSSION

On appeal to this Court,[3] Appellants argue that the trial court committed an error of law by entering judgment in favor of Allen and against Appellants and by denying Appellants' Post-Trial Motion, because Allen did not make a protected report of wrongdoing or waste under the Law. More specifically, Appellants argue that Allen's report regarding Officer Holmes' conduct does not constitute a report of wrongdoing under the Law because Allen failed to identify at trial any law, regulation, or rule that prohibits Officer Holmes' conduct. Appellants argue further that Allen's report regarding Officer Holmes' conduct also does not constitute a good faith report of waste under the Law because: (1) Allen's report does not reference waste, money, City resources, or Officer Holmes' salary; (2) Allen did not present any evidence at trial to establish that his report was made in good faith—*i.e.*,

---

[3] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007), *appeal denied*, 950 A.2d 270 (Pa. 2008). We may not reweigh the evidence or substitute our own judgment for that of the fact-finder. *Id.* "A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review." *Id.* "The standard of review regarding the sufficiency of the evidence is whether the evidence admitted before the trial court and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict winner, is sufficient to support all of the elements of the offense." *Id.*

Our standard of review of a trial court's decision denying a motion for judgment notwithstanding the verdict or, in the alternative, a new trial is to determine whether the trial court committed an error of law or abused its discretion. *Paxton Hollow Estates, Ltd. v. Lower Paxton Twp.*, 501 A.2d 1175, 1177 n.3 (Pa. Cmwlth. 1985). Judgment notwithstanding the verdict "will be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper, and any doubts should be resolved in favor of the verdict." *Posh Constr., Inc. v. Simmons & Greer, Inc.*, 436 A.2d 1192, 1193 (Pa. Super. 1981). While we recognize that Pennsylvania Superior Court cases are not binding on this Court, such cases "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

6

that he had reasonable cause to believe that Officer Holmes' salary was being misused or that Officer Holmes was not otherwise working when he was not with the horses; and (3) Allen did not produce any evidence at trial to establish an actual or substantial loss—*i.e.*, the amount of Officer Holmes' salary and/or that Officer Holmes did not actually work the hours he submitted to payroll.

In response, Allen argues that the trial court properly entered judgment in his favor and denied Appellants' Post-Trial Motion, because he presented evidence at trial sufficient to establish that he made a good faith report of both wrongdoing and waste under the Law. More specifically, Allen argues that his report constituted a good faith report of wrongdoing under the Law because: (1) he characterized Officer Holmes' training deficiencies as cruelty to and neglect of animals, which is criminalized by Sections 5532 and 5533 of the Crimes Code (Code)[4] and Philadelphia Code § 10-108.2(1)(f); (2) Lt. McCann testified "that it

---

[4] 18 Pa. C.S. §§ 5532-5533. Section 5532(a) of the Code, which defines the offense of neglect of an animal, provides:

> A person commits an offense if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including any of the following:
>
> > (1) Necessary sustenance and potable water.
> >
> > (2) Access to clean and sanitary shelter and protection from the weather. The shelter must be sufficient to permit the animal to retain body heat and keep the animal dry.
> >
> > (3) Necessary veterinary care.

Section 5533(a) of the Code, which defines the offense of cruelty to animals, provides: "A person commits an offense if the person intentionally, knowingly or recklessly illtreats, overloads, beats, abandons or abuses an animal." Philadelphia Code § 10-108.2(1)(f) provides, in pertinent part:

> (1) No person shall keep any horse at any location, other than at a commercial stable validly licensed . . . , unless such person complies with all of the following requirements:

7

would violate departmental policy for a horse to go long periods of time without being ridden," and, therefore, his report clearly addresses a "violation of the policy regarding the trainer's duties"; and (3) Lt. McCann testified that a primary function of the Mounted Unit is to provide care to the horses, and, therefore, his report "regarding the failure to perform this very core mission must be deemed as wrongdoing."[5] (Allen's Br. at 23-24.) Allen argues further that his report also constituted a good faith report of waste under the Law because the report alleged that Officer Holmes rode only two horses for two hours per day, and Lt. McCann, the recipient of the report, understood the allegation to mean that Officer Holmes would leave for the day after only two hours of work—*i.e.*, "Officer Holmes would only work 25% of his scheduled day, not earning the other 75% of his salary." (Allen's Br. at 25.) Allen also argues that he had a good faith basis to make his report due to his significant past experience with the Mounted Unit and his current observations of the interactions between the trainers and the horses.

The Law protects an employee who makes a good faith report of an instance of wrongdoing or waste from an adverse employment action. Section 3 of the Law.[6] In other words, the Law prohibits an employer from discharging, discriminating against, or retaliating against an employee because such employee

---

. . . .

    (f) Horses shall be maintained in good health and shall not be subjected to injurious treatment or conditions, and shall receive adequate veterinary care.

[5] In his brief, Allen also argues that he had a good faith basis for making his report of wrongdoing. In light of our decision below that his report does not constitute a report of wrongdoing, we need not address whether he made such report in good faith. As such, we will not address Allen's arguments on this issue in any further detail.

[6] 43 P.S. § 1423.

8

makes a good faith report of an instance of wrongdoing or waste. *See id.* A "good faith report" is defined as "[a] report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Section 2 of the Law.[7] An employee alleging a violation of the Law may bring a civil action against his employer and must prove "by a preponderance of the evidence that, prior to the alleged reprisal, the employee . . . reported . . . in good faith . . . an instance of wrongdoing or waste to the employer." Section 4(a)-(b) of the Law.[8]

"Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Section 2 of the Law. In order to establish a wrongdoing under the Law, an employee "must demonstrate [that he] made a report of some action by [his] employer . . . , which, if proven, would constitute a violation of a law or regulation[;] . . . the report must be of an actual violation, not a potential or contemplated violation." *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 434 (Pa. Super. 2018). This Court previously concluded that a report of a violation of an employer's unwritten policy relative to patient safety does not constitute a report of wrongdoing under the Law. *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1073 (Pa. Cmwlth. 2013). Similarly, the Pennsylvania Superior Court concluded that an employee who had reported that a doctor's conduct was ethically improper and "fell below an acceptable standard of medical care" could not state a "cognizable claim [of wrongdoing] under the [Law]" because the

---

[7] 43 P.S. § 1422.

[8] 43 P.S. § 1424(a)-(b).

9

regulatory statutes cited by the employee were "entirely too general and vague to permit the conclusion that a violation had occurred." *Riggio v. Burns*, 711 A.2d 497, 501 (Pa. Super. 1998) (en banc), *appeal dismissed*, 739 A.2d 161 (Pa. 1999).

"Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Section 2 of the Law. There is a dearth of case law in this Commonwealth interpreting the Law, including what does or does not constitute a report of waste. Nevertheless, we have pieced together both reported and unreported Pennsylvania and federal district court cases that provide guidance on what may or may not constitute a report of waste.[9] In *Bailets v. Pennsylvania Turnpike Commission*, 123 A.3d 300 (Pa. 2015), the Pennsylvania Supreme Court reversed an order of this Court that entered summary judgment in favor of the appellees/respondents, holding, *inter alia*, that a fixed-price contract could potentially involve waste because: (1) "the contract price may be artificially inflated for a politically[]connected vendor who need not compete on a level playing field or worry that its wasteful practices will be challenged by the procuring agency"; and (2) "if the fixed-price contract includes an item (such as knowledge transfer) which then becomes the subject of a supplemental contract, the price of the supplemental contract constitutes waste." *Bailets*, 123 A.3d at 308. In *Bennett v. Republic Services, Inc.*, 179 F. Supp. 3d 451 (E.D. Pa. 2016), the United States District Court for the Eastern District of Pennsylvania concluded that a single occurrence of a manager improperly noting an earlier than actual arrival time onto another employee's time sheet did not constitute

---

[9] Federal district court decisions "may offer guidance, but they are not binding precedent upon this Court." *Gould v. City of Aliquippa*, 750 A.2d 934, 938 (Pa. Cmwlth. 2000).

substantial waste under the Law. *Bennett*, 179 F. Supp. 3d at 455. In *Bifano v. Waymart Borough* (M.D. Pa., No. 3:16-0245, filed December 22, 2016), the United States District Court for the Middle District of Pennsylvania held that a series of allegations against a police chief—*i.e.*, that the police chief frequently sat in his office in plain clothes, with his personal vehicle outside the building and/or without a police vehicle available to him, avoiding telephone calls, and avoiding some in person citizen complaints—"cumulatively amount[ed] to a plausible claim for reporting waste" sufficient to withstand a motion to dismiss. *Bifano*, slip. op. at 15.

Here, the trial court concluded that Allen made a good faith report of both wrongdoing and waste within the Mounted Unit. Our review of the record, however, reveals that Allen did not identify any statute, regulation, ordinance, or code of conduct/ethics that Officer Holmes allegedly violated, nor did the trial court identify any in its decision. While we acknowledge that Allen, as a lay person, need not have referenced the applicable statute, regulation, ordinance, or code of conduct/ethics in his report, Allen was still required to connect Officer Holmes' conduct with some type of specific violation that would satisfy the definition of "wrongdoing" as set forth in Section 2 of the Law before the trial court could conclude that Allen's report constituted a report of wrongdoing. In a haphazard attempt to minimize the deficiency in his proof before the trial court, Allen identifies in his brief to this Court, for what appears to be the first time in this case,[10] a statute,

---

[10] In their brief, Appellants suggest that Allen failed "to identify a violation of any law, regulation or rule which prohibits the specific conduct he reported." (Appellants' Br. at 28.) Appellants even cite to Allen's testimony, where he admitted that "he did not 'know of any' law, regulation, rule or procedure that riding a horse for only two hours a day violates." (Appellants' Br. at 31 (citing N.T. 11/15/2016 at 9).) Allen has also not identified any place in the record where he had previously raised the applicability of the statute, ordinance, training requirement, and/or primary obligation of the Mounted Unit. In their reply brief, Appellants also suggest that Allen

11

an ordinance, a training requirement, and a primary obligation of the Mounted Unit that he believes Officer Holmes violated. Allen, however, did not rely on the statute, ordinance, training requirement, or primary obligation of the Mounted Unit at trial, and, thus, they could not have formed the basis for the trial court's decision that Allen's report constituted a report of wrongdoing.

In addition, the statute, ordinance, training requirement, and primary obligation of the Mounted Unit that Allen now argues Officer Holmes violated do not establish that Allen's report constituted a report of wrongdoing. First, Sections 5532 and 5533 of the Code, addressing cruelty to and neglect of animals, were added to the Code in 2017,[11] nearly three years after Allen made his report. Thus, Sections 5532 and 5533 of the Code did not govern Officer Holmes' conduct at the time of Allen's report and, therefore, cannot now be used by Allen to support his allegation of wrongdoing. In addition, even if such provisions did apply, Allen's report only addresses Officer Holmes' deficiencies with respect to the horses' training and not any failure of Officer Holmes to provide the horses with basic needs such as water, shelter, or veterinary care or any ill treatment, beating, or abuse of the horses by Officer Holmes. *See* Sections 5532 and 5533 of the Code. Second,

has raised this new theory for the first time on appeal because he recognizes that the trial court's decision with respect to wrongdoing is fatally flawed. Appellants argue that, based on the position he took before the trial court—*i.e.*, that he based his report, not on the violation of any law, but on his experience with horses—Allen should be judicially estopped from now arguing that he reported specific violations of law. We do not necessarily disagree with Appellants' position. We need not make a decision, however, on whether Allen should be judicially estopped from making this argument because, as explained more fully below, the statute, ordinance, training requirement, and primary obligation of the Mounted Unit cited by Allen in his brief do not establish the requisite wrongdoing under Section 2 of the Law.

[11] The offense of cruelty to animals was previously addressed by 18 Pa. C.S. § 5511, which was repealed by the Act of June 28, 2017, P.L. 215, and required a person to engage in much harsher conduct for such conduct to constitute cruelty to animals—*i.e.*, killing, maiming, poisoning, etc.

12

Philadelphia Code § 10-108.2(1)(f) only applies to horses that are not housed at a commercial facility, and the Mounted Unit's horses were housed at a commercial facility rented by the Department. (*See* R.R. at 71a.) Lastly, Allen has not established that the training requirement and primary obligation of the Mounted Unit, which Allen alleges were established by Lt. McCann's testimony, are a part of any code of conduct/ethics of the Department or the Mounted Unit. *See* Section 2 of the Law. For these reasons, we conclude that the trial court committed an error of law by concluding that Allen's report constituted a good faith report of wrongdoing within the Mounted Unit.

The best that we can discern from our review of the record is that, in support of his allegation of waste, Allen advanced a ghost-employee theory before the trial court—*i.e.*, that Officer Holmes worked for only two hours per day but was paid a full salary. In order to support his ghost-employee theory on waste, Allen was required to present evidence to establish every predicate fact to support it, including that he had reasonable cause to believe that Officer Holmes worked for only the two hours that he spent with the horses each day. Based on his trial testimony, however, Allen's belief that Officer Holmes was a ghost employee was not reasonable. Allen admitted that he did not know where Officer Holmes was when he was not with the horses or whether Lt. McCann had assigned Officer Holmes other job responsibilities outside of the work that he performed with the horses. (*See* R.R. at 192a-93a.) Allen could not establish that he had reasonable cause to believe that Officer Holmes was a ghost employee simply based on his observations that, under his previous experience with the Mounted Unit more than twenty years ago, the trainers worked with the horses for most, if not all, of Allen's shift each day, whereas, Officer Holmes worked with the horses for only two hours

13

per day. In the absence of any such evidence, no factfinder could reasonably conclude that Allen had a reasonable belief that Officer Holmes worked for only two hours per day but was paid a full salary or that Allen made his report of waste in good faith. For these reasons, we conclude that the trial court committed an error of law by concluding that Allen's report constituted a good faith report of waste within the Mounted Unit.

### III. CONCLUSION

Based on the foregoing, we conclude that the trial court committed an error of law by entering judgment in favor of Allen and against Appellants and by denying Appellants' Post-Trial Motion. Accordingly, we reverse the trial court's order.

P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joel Allen                              :
                                        :
            v.                          :   No. 1253 C.D. 2017
                                        :
City of Philadelphia and                :
Lt. Daniel McCann,                      :
                        Appellants      :

# **O R D E R**

AND NOW, this 9th day of April, 2019, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED.

---

P. KEVIN BROBSON, Judge